HOWARD HOTZE, SR., Respondent, v MARION HOTZE, Appellant.

MARION HOTZE, Appellant, v HOWARD HOTZE, SR., Respondent. (Appeal No. 1.)

·In the Matter of MARION J. MERLUZZI, Appellant, v HOWARD E. HOTZE, Respondent. (Appeal No. 2.)

Fourth Department, April 15, 1977

*Abend, Driscoll & Lutz (James Lutz* of counsel), for appellant.

*Anthony J. Di Caprio, Jr.,* for respondent.

SIMONS, J. The mother of Howard Hotze, Jr. appeals from two orders of Family Court. The first, dated March 14, 1974, transferred custody of Howard, Jr. from Mrs. Hotze (now Merluzzi) to Mr. Hotze and made no provision for visitation by the mother. The second order, dated August 5, 1975, denied her petition seeking visitation rights with her son.

Appellant and respondent were married in 1961. It was appellant's third marriage and respondent's first. Howard, Jr. was born in 1964. In 1967 the parents separated and in 1970 appellant sued respondent for divorce. Respondent counter-

claimed for divorce based upon appellant's cruel and inhuman treatment. At the trial in 1971 appellant's complaint was dismissed, respondent was granted a divorce on his counterclaim and custody of Howard, Jr. was awarded to appellant. Respondent had been granted visitation rights by Family Court during the period of separation and was granted similar rights by Supreme Court after the divorce. His efforts to exercise these rights of visitation, however, met with serious resistance and on at least four occasions the courts determined that appellant had violated the visitation orders and she was given suspended jail sentences. The history of litigation between the parties is not limited to contempt applications and over the years they have been in court many times on such charges as harassment, assault and petit larceny. For the most part the charges have been dismissed.

The issue of custody was strenuously litigated at the time of the divorce with expert evidence presented on both sides. The respondent's psychiatric witness detected serious emotional problems in Howard, Jr. caused by the prolonged parental conflict and the domineering nature of his mother. Appellant's psychiatrist found some emotional pathology but his opinion was generally favorable to the mother's continued custody. (An earlier 1969 psychological study, unknown to the divorce court or respondent at the time of that trial, had found that Howard, Jr. held animosity towards his mother and suffered from a serious anxiety problem.) The divorce court awarded custody to the mother with visitation rights to the father. As noted, respondent was repeatedly frustrated in his visitation rights both before and after the divorce and he finally brought a petition in Family Court seeking transfer of custody of Howard, Jr. The 1974 order appealed here resulted. Howard, Jr., had lived with his mother continually from the time of his birth until custody was transferred to his father by Family Court's 1974 order.

It is the position of appellant that Family Court was without authority to change custody under section 467 of the Family Court Act because the order was not based upon a subsequent change of circumstances (see *People ex rel. Yaklin v Yaklin,* 19 AD2d 405, 407), that the court erred because it did not limit its investigation of the facts to circumstances occurring after the divorce and that the decision of the court was erroneous on the facts.

At the trial in Family Court there was additional expert

evidence by the psychologists and psychiatrists who had previously examined Howard, Jr. which indicated a further deterioration in his emotional health after the 1971 divorce. Particularly significant was the contrast between the 1969 findings by the psychologist and her findings in 1973 in which she found an intensification of Howard, Jr.'s feelings towards his mother and that there now existed a serious disruption in his personality. The psychologist recommended a change in the infant's situation. Significant also is the recommendation of appellant's own psychiatric expert who now recommended for the first time that Howard, Jr. should undergo treatment. This material change in the boy's emotional health occurring after the divorce decree warranted a re-examination of custody by Family Court (see *People ex rel. Foussier v Uzielli,* 23 AD2d 260, affd 16 NY2d 1057). Having properly determined its right to review because of a material change in circumstances, the court contrasted the experts' recent findings with the evidence before the divorce court, considered them with the history of the family and correctly determined that custody of the child should be transferred to the father because the child's welfare was being adversely affected by the mother's continued custody.

The second order appealed denied visitation by appellant. Normally, when custody of a child is granted to one parent or a nonparent, the noncustodial parent should have reasonable rights of visitation, provided he or she is a fit person and there are no extraordinary circumstances. The denial of this right of a noncustodial parent to see the child is such a drastic remedy that an order doing so should be based upon substantial evidence that the visitation is detrimental to the child's welfare *(Kresnicka v Kresnicka,* 42 AD2d 607; *Herb v Herb,* 8 AD2d 419). Nevertheless, the court's first concern must be the interest of the child, not any supposed right of the parent. "To paraphrase the language of Judge CARDOZO in *Finlay v. Finlay* (240 N.Y. 429, 433-434), the court acts as *parens patriae* to do what is best for the interest of the child and puts itself in the position of a 'wise, affectionate and careful parent'; the court does not determine 'rights' as between a parent and a child or as between one parent and another; the court interferes for the protection of infants, qua infants, by virtue of the prerogative which belongs to the State as *parens patriae.*" *(People ex rel. Meredith v Meredith,* 272 App Div 79, 82.) Clearly, when the exposure of a child to one of its parents presents a risk of

physical harm, a court should deny visitation. A parent's visitation should just as clearly be denied by a court where it harms the child by producing serious emotional strain or disturbance (see generally, 2 Foster and Freed, Law and the Family, § 29.24; Divorce-Visitation Rights, Ann 88 ALR2d 148). Quite as important and included in judging the emotional harm and the continuing anxiety which may be caused to a child by visitation is a consideration of the risk of emotional harm which may be caused if the noncustodial parent promotes parental strife by absconding with the child during visitation or disobeys the court's order in some lesser degree. Significantly in this case, the examination of the psychologist, made only a few months after the transfer of custody to the father, showed that Howard, Jr. had experienced "a dramatic change" for the better in his mental health and this improvement continued to manifest itself in a further examination in November, 1974. The inference from these findings is inescapable that the mother's possessive, domineering nature was largely responsible for the chronic anxiety that had previously troubled the child.

While these findings confirmed the propriety of the order transferring custody, a court might find, nevertheless, that periodic visitations by the mother would not damage the boy's new-found security and stability. Appellant's conduct suggests otherwise. In all her contacts with her son, her letters, telephone calls and her secretive encounters with the child at the school bus stop, she reiterated the same destructive theme to him, "is your father beating you?", "try to escape", "Don't give up hope" and so on. In a lengthy *in camera* interview with the Judge, Howard, Jr. stated not only that he did not want to live with his mother, but that he wanted no contact with her whatever. The child's wishes are not decisive, of course, particularly on the matter of visitation (*Di Biase v Scheinberg*, 47 AD2d 657, and see *Obey v Degling*, 37 NY2d 768, 771), but Howard, Jr.'s complaints were corroborated by other witnesses and in many instances were confirmed by the testimony of the mother herself, suggesting that his desires were not the product of living with his father for a year or of the father's conscious attempts to influence him.

A few of the incidents described in this record will indicate how insensitive appellant was to the needs and feelings of her children. For example, while the custody trial was in progress in 1974, she permitted a local television station to interview

her son, then 9 years old, concerning the custody dispute between his parents and his feelings about it, thereby exposing the details of this highly personal matter to his neighbors and school acquaintances. Again, when Howard, Jr. went to live with his father after Family Court transferred custody, he took the family dog with him. The mother reacted by charging respondent with larceny of the dog and seeking to replevin it. Her relationship with her daughter by a former marriage is revealing. It had deteriorated to such an extent that the daughter left home at the age of 18. With encouragement and assistance from her father and respondent, she went to college. Appellant's reaction to this was to attempt to have the daughter expelled. On one occasion the mother drove by respondent's house and publicly and in Howard, Jr.'s presence made unfounded accusations of homosexuality against respondent and charged respondent with sleeping with her daughter. Indeed, her animosity so overcame her judgment that she named her daughter corespondent in her 1971 divorce action, an accusation respondent and her daughter denied and which appellant withdrew during the divorce trial.

The recitation of these few incidents is sufficient to demonstrate that Family Court correctly determined that the mother's interests in visitation rights were not motivated by a desire to promote the well-being and happiness of her son, that her contacts were detrimental to the boy's emotional health and that based upon past difficulties with appellant, visitation presented a risk to the stability of Howard, Jr.'s living situation.

This is not to say that appellant will never be permitted visitation rights with her son. There is much that she could do to correct this situation. She could seek the counseling which she has consistently refused, and attempt to gain some insight and understanding of her responsibilities and her son's needs. She could direct her efforts toward developing a healthy interest in her son's activities and cease her attempts to destroy his affection for his father and his stepsister. A 13-year-old-boy who has suffered from such a traumatic childhood has great need for genuine maternal love and support. Certainly, if appellant were to take positive steps to give it to him, a court might properly consider a modification of the no visitation order.

The orders should be affirmed.

CARDAMONE, DILLON, GOLDMAN and WITMER, JJ., concur.

Orders unanimously affirmed, without costs.