IRIS S. FARHI, Respondent, v MICHAEL FARHI, Appellant.—Order, insofar as it holds defendant in contempt of court unanimously affirmed,

without costs; order otherwise reversed and matter remitted for further proceedings in accordance with memorandum. Denman, J., not participating. Memorandum: This contempt proceeding was instituted on March 7, 1977 by order to show cause which, *inter alia,* directed that defendant be arrested pursuant to CPLR article 61. After trial he was adjudged in contempt of court for his willful violation of the custody and visitation provisions of a prior judgment of divorce. The court modified the divorce decree by eliminating defendant's visitation privilege and further directing that defendant have no future right of visitation until he "has satisfied all of his economic responsibilities pursuant to the judgment of divorce dated September 17, 1976". The parties were married in 1971 and are the parents of one child, Ness Baruch Farhi, born July 12, 1973. In the divorce decree plaintiff was awarded custody of the child and defendant was granted visitation rights on Tuesday or Saturday of each week from 9:00 A.M. to 5:00 P.M. Additionally, the decree directed defendant to pay accrued arrearages of temporary alimony and child support in the sum of $1,430 and further directed that he pay $50 per week for child support. He was also ordered to pay counsel fees of $3,000 and litigation expenses of $727.45. The latter expenses were incurred because defendant denied under oath during the divorce trial that he had been previously married and divorced in the State of California, and it was necessary for plaintiff to retain a California lawyer to provide proof of the prior marriage and divorce. No appeal was taken from the judgment of divorce and, except for periodic payments of child support, defendant has not otherwise complied with his financial obligations under the divorce decree. On January 14, 1977 defendant's application for expanded visitation privileges was denied and plaintiff's cross motion for an order of contempt, based upon the failure of defendant to make payments under the divorce decree, was adjourned until January 25, 1977. On January 15, 1977, while exercising his visitation privilege, defendant absconded with the child to the State of Pennsylvania where he retained custody or control of the child for approximately 28 days. It is not seriously disputed, nor could it be, that defendant's removal of the child to another State and his actions thereafter were knowingly and willfully contumacious of the custody and visitation provisions of the divorce decree. He used his control of the child as a means of extorting more favorable visitation and financial terms from plaintiff under the threat that she would never again see the child. He threatened and, indeed, may actually have contemplated the removal of the child to Israel. He repeatedly lied as to the whereabouts of the child by stating that he was in Israel when, in fact, he had sent the child to Toronto, Canada, where he stayed for a week with one of defendant's relatives. In mitigation of his contemptuous behavior, it is argued that his actions were motivated by his love and concern for his offspring. That argument is greatly belied, however, by the demands he made for abatement of his court-ordered financial obligations. Those demands were reluctantly but necessarily acceded to by plaintiff and incorporated into the illicit agreement which was compelled by defendant. He also demanded the withdrawal of the contempt proceeding then pending in this State as a condition of the child's return to plaintiff. Initially, we note that while the payment of alimony may be suspended or canceled when a custodial parent interferes with or withholds court-ordered visitation rights (see Domestic Relations Law, § 241 [as added by L 1978, ch 232, § 1, eff June 5, 1978]), it does not follow that visitation may be denied solely for reasons unrelated to the best interests and welfare of the child. Thus the failure of the noncustodial parent to make payments of support, alimony and counsel fees, without

more, is an insufficient basis upon which to deny visitation. The sweeping denial of the right of a noncustodial parent to visit or see the child "is such a drastic remedy that an order doing so should be based upon substantial evidence that the visitation is detrimental to the child's welfare" *(Hotze v Hotze,* 57 AD2d 85, 87, mot for lv to app den 42 NY2d 805; see *People ex rel. Sanger v Sanger,* 55 AD2d 578; *Matter of Molier v Molier,* 53 AD2d 996, mot for lv to app granted 42 NY2d 803; *Herb v Herb,* 8 AD2d 419). In assessing the effect upon the child of an award of visitation rights, the court should consider "the risk of emotional harm which may be caused if the noncustodial parent promotes parental strife by absconding with the child during visitation or disobeys the court's order in some lesser degree" *(Hotze v Hotze, supra,* p 88). Without question, this record amply demonstrates that defendant should not be entrusted with visitation of a nature which would permit the recurrence of his unconscionable behavior. At the same time it may fairly be found that he is otherwise an affectionate parent and has a strong desire to maintain a relationship with his son. Additonally, it does not appear that the child suffered any physical or demonstrated emotional harm during the time he was with defendant. We do not conclude, therefore, that defendant should be totally denied contact with the child. In order to maintain the father-son relationship which may be crucial to the child's emotional development, defendant should be permitted limited visitation on one day of each week under carefully controlled conditions designed to prevent further violations of the court's custody directive. The imposition of those conditions is properly the province of the trial court (see *Matter of De Biase v Scheinberg,* 47 AD2d 657). (Appeal from order of Erie Supreme Court—contempt proceeding.) Present—Marsh, P. J., Simons, Dillon, Denman and Witmer, JJ.