OPINION OF THE COURT
Mara T. Thorpe, J.
The foster parents of the children who are the subject of these proceedings have made a motion for an order (1) *843 suspending the respondent mother’s right to visit with her children and (2) directing the Commissioner of Social Services to commence proceedings pursuant to the Social Services Law to terminate all of her parental rights. An identical motion was subsequently filed by the Catholic Home Bureau (hereafter agency) which by contract with the Commissioner of Social Services is responsible for supervising the children’s foster home placement.
Pablo C., born December 20,1972, and Yessenia C., born October 28, 1975 were placed as neglected children with the Commissioner of Social Services for 18 months on March 15,1977. The adjudication was based on the respondent’s admission that she failed to take any steps to prevent either the death of a third child or injuries to Pablo at the hands of her paramour. On September 15,1978, placement of the children was extended for an additional year. The court prohibited the return of the children to their mother without prior notification to the court and counsel.
In January, 1979, the agency gave due notice of its plan to place the children and respondent in a residential mother-child program of the New York Foundling Hospital (N.Y.F.H.). The foster parents obtained a stay of this plan pending a hearing on whether the earlier extension of placement order should be modified. On May 3, 1979, all parties stipulated that the extension of placement order continue in effect and that the children be prepared for separation from the foster parents and for entry into the N.Y.F.H. program with respondent in July, 1979. The matter was adjourned to August, 1979, for a progress report.
What transpired while the children were in the N.Y.F.H. program will be discussed below. They were removed from that program, however, on July 10,1979, over the objection of the respondent, and returned to the foster parents. Since their return, respondent has requested visitation both by letter to the agency and by oral motion at subsequent court appearances. The foster parents have refused to make the children available for further visitation and on August 28, 1979, filed the motion now before the court.
Although the foster parents’ papers do not so specify, the court treats their motion as having been made pursuant to *844 section 1061 of the Family Court Act to modify the September, 1978, extension of placement order. Since they are parties to the extension of placement proceeding by virtue of section 1055 (subd [b], par [iii]) of the Family Court Act and the court’s jurisdiction over the proceeding is continuing, there is no issue regarding their standing to make the instant motion regarding visitation. Although the propriety of an agency’s making such a motion has been questioned,[2] the court need not address that issue at this time since the agency’s position is identical to that of the foster parents. It is clearly within the power of the court to make an order regarding visitation by a respondent parent with a child who is in placement with the Commissioner of Social Services (Family Ct Act, § 1056; see, e.g., Matter of Loretta Ann M., 65 AD2d 585; Matter of Gandy, 58 AD2d 525; Matter of Ernestina H., 55 AD2d 647), and thus the court may properly proceed to determine the controversy presented.
Pursuant to stipulation, the court has held in abeyance the portion of the motions seeking an order directing initiation of a termination of parental rights proceeding. Thus, evidence relevant to the question of suspension of visitation only was introduced at the hearing. Three principal issues are raised in this regard: (1) what is the substantive standard to be applied in determining whether visitation should be suspended? (2) what standard of proof must the proponent of suspension of parental visitation rights meet? and (3) has that standard been met in this case?
It is agreed by all participants in the litigation that there is no statute which specifically governs the standard of proof which must be met in order to justify suspension of parental visitation rights, nor is the applicable substantive standard clearly set forth in either statute or case law. All but respondent assert that the substantive test is the “best interests of the child”. The respondent argues that there must be a “grave threat” to the child.
The Commissioner of Social Services and the Law Guardian further argue that the applicable standard of *845 proof is a “preponderance of the evidence” inasmuch as that is the standard mandated by section 1046 (subd [b], par [i]) of the Family Court Act for a determination of whether a child is abused or neglected and by section 384-b (subd 3, par [g]) of the Social Services Law for a determination of permanent neglect and abandonment. The argument is that State intervention in the parent-child relationship which results in removal of the child from the parent’s custody, or in complete termination of the parent-child relationship, is more drastic than suspension of visitation; therefore, if only a preponderance standard is required in those cases, that is all that should be required in this type of case. Respondent argues that visitation may be suspended only upon “clear and convincing evidence” and urges the court to follow the direction of the case law regarding the suspension of visitation in the context of disputes between custodial and noncustodial parents.
i
The case law pertaining to the substantive standard to be applied in determining whether visitation between a parent and child should be suspended indicates that the applicable standard is the “best interests” standard, but that parental visitation is considered to be in a child’s best interests in the absence of proof that it will be harmful to him.
In private visitation disputes it has been established that while visitation is always to be premised upon a consideration of the best interests of the children, those interests include visitation with the noncustodial parent (Entwistle v Entwistle, 61 AD2d 380, app dsmd 44 NY2d 851; Strang v Strang, NYLJ, April 24, 1980, p 14, col 4) in the absence of evidence showing that such visitation is “detrimental” or “inimical” to the children’s welfare (Chirumbolo v Chirumbolo, 75 AD2d 992, 993; Farhi v Farhi, 64 AD2d 840, 842; Hotze v Hotze, 57 AD2d 85, 87, mot for lv to app den 42 NY2d 805; Pallares v Pallares, NYLJ, Sept. 20, 1979, p 15, col 2; Matter of Doe v Doe, 86 Misc 2d 194, 197; Matter of Denberg v Denberg, 34 Misc 2d 980, 986). In Hotze v Hotze (supra, p 88), the court elaborated on the term “detrimental”, stating that when exposure of a child to a parent presents a risk of physical harm or of causing *846 “serious emotional strain or disturbance”, visitation should be denied. To justify deprivation of reasonable visitation, however, the evidence of risk to the child must be “real and objective”. (Strang v Strang, supra, p 15, col 1.)
There are few reported cases concerning children in the care of the Commissioner of Social Services which include reference to the question of parental visitation. Those that do, in contrast to the private visitation cases, contain little or no discussion of the standard used in determining whether visitation should be prohibited. (See, e.g., Matter of Loretta Ann M., 65 AD2d 585, supra; Matter of Gandy, 58 AD2d 525, supra.) However, the facts set forth in those cases suggest that visitation may well have posed a risk of harm to the children involved.[3] To that extent they are consistent with the private visitation cases.
It is New York State policy to facilitate, whenever possible, the return to their natural families of children who have been removed from home both through child protective proceedings and voluntary placement by the parent. (Social Services Law, § 384-b, subd 1, par [a].) This policy is predicated upon the legislative findings that a normal family life offers the best opportunity to a child to develop and thrive, that a child’s need for a normal family life will usually best be met in the natural home, and that parents are entitled to bring up their own child unless the best interests of the child would be thereby endangered. (Social *847 Services Law, § 384-b, subd 1, par [a].) Maintenance of the relationship between the parent and child through visitation is an important element of the policy of reuniting families. It is essential to the ability to return a child home without adverse psychological consequences for him and it helps to motivate a parent to plan for his return. Encouraging such visitation is part of the obligation of the agency charged with the child’s care to woyk towards reunion of the family.[4]
Application of a “best interests” standard which contains a threshold requirement of potential harm before parental visitation may be suspended is fully consistent with, and indeed logically required by, the State’s policy of reuniting families. While that threshold may in fact exist or be near in any case in which removal was necessary for protection of the child, there appears to be no valid reason, in principle, to distinguish private visitation disputes from those between parent and State insofar as the substantive standard for denial of visitation is concerned.
ii
Research has revealed no New York cases which discuss the standard of proof which must be met by one who would deny all visitation to a parent whose child is in. the care of the State. In the absence of legislative direction and decisional precedent, the court proceeds to assess the function of a standard of proof and the interests served thereby.
The function of a standard of proof is to allocate the risk of error between the litigants and to “instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.” (Matter of Winship, 397 US 358, 370 [Harlan J., concurring]; Addington v Texas, 441 US 418.)
The “preponderance of the evidence” standard is applicable in the typical civil dispute. Under this standard, the one who carries the burden of proof must persuade the fact finder that the existence of a fact is more probable than its nonexistence. (See Richardson, Evidence [Prince, 10th ed], §97; PJI 1:60.) This standard allocates the risk of an *848 erroneous decision roughly equally between the litigants. Since society has a minimal interest in the outcome of such an action, the law is indifferent as between plaintiffs and defendants.
The higher, “clear and convincing” standard has been required in those civil cases where the “interests at stake * * * are deemed to be more substantial than mere loss of money”. (Addington v Texas, supra, p 424; Matter of Eichner [Fox], 73 AD2d 431, 469.) It is also utilized “to protect particularly important individual interests” which are more highly valued by society.[5] (Addington v Texas, supra, p 424.)
In Addington v Texas (supra), the Supreme Court held that the due process clause of the Fourteenth Amendment required that the involuntary commitment of a person to a mental hospital be based upon evidence which is at least “clear and convincing”. The Addington analysis is useful here since the interests at stake are not only defined by the State policy articulated in section 384-b (subd 1, par [a]) of the Social Services Law, but as in Addington (supra), are of constitutional magnitude as well. It has been clearly established that the “liberty” protected by the due process clause of the Fourteenth Amendment encompasses the integrity of the natural family unit (Smith v Organization of Foster Families, 431 US 816; Stanley v Illinois, 405 US 645; Prince v Massachusetts, 321 US 158; Pierce v Society of Sisters, 268 US 510; Meyer v Nebraska, 262 US 390) and that the right to the preservation of the family unit encompasses, in turn, the reciprocal rights of both parent and child (Smith v Organization of Foster Families, supra; Stanley v Illinois, supra; Prince v Massachusetts, supra; Duchesne v Sugarman, 566 F2d 817).
In arriving at the conclusion that “clear and convincing” evidence is required in civil commitment cases, the Supreme Court assessed the extent of the interests of both the individual and the State in the outcome of a commitment proceeding and the use of a particular standard of proof. A similar assessment of the interests of the child, *849 parent and State in a determination of the question of suspension of visitation and the use of a particular standard of proof leads to the conclusion that the appropriate standard in this type of proceeding is the equivalent of the “clear and convincing” standard.
An order suspending visitation is a drastic action which so rends the family relationship that it may well set the stage for termination of parental rights. As stated in Section I, supra, the State’s policy of returning children to their families whenever possible is based on the legislative determination that a normal family life offers a child the best opportunity for development and that his need for a normal family life will usually best be met in the natural home. Thus, if a child has been removed from home, the State’s first obligation is to reunite the family. (Social Services Law, § 384-b, subd 1, par [a].) It is only when the parent cannot or will not provide a normal family home for the child that a permanent alternative is to be sought. (Social Services Law, § 384-b, subd 1, par [a].) It is apparent, therefore, that neither the State nor the child has any interest in maintenance of the child away from the natural home unless a normal home cannot thereby be provided.
Visitation between parent and child is a critical element of the policy favoring reunion, since it would be a rare case in which the latter could be accomplished without maintenance of the parent-child relationship. Visitation can be and often is strictly supervised or monitored by the child care agency as a protection for the child. Since his interests can be safeguarded in this way, when necessary, while casework with the parent progresses, isolated instances of parental incapacity during the process would ordinarily not be a basis for termination of the agency’s obligation to encourage visitation. (See Matter of Ray A.M., 37 NY2d 619, 623.) However, use of the preponderance standard for suspension of visitation would create the risk that a fact finder would decide to suspend visitation based solely on such conduct and thus create the risk of increasing the number of instances in which visitation is erroneously suspended.
As measured by the State policy set forth in section 384-b (subd 1, par [a]) of the Social Services Law, and by the *850 level of protection afforded the family unit by the Constitution, the weight and gravity of the parent’s and child’s interest in the reuniting of the family unit, on the other hand, are of similar magnitude to the weight and gravity of the liberty interest under consideration in Addington (441 US 418, supra) which was held to require the protection of the “clear and convincing” standard of proof.
Use of the higher standard would reflect the premise of State policy and the Constitution that maintenance of the family unit is the preferred solution, and would serve to further those particularly important interests of the child and parent by reducing the likelihood of erroneous decisions to suspend visitation. Given the interests of the child in being returned home if possible, and the interest of the State in effectuating that outcome, and given the fact that supervised visitation provides protection for the child, it is not apparent that there is any countervailing interest on the part of the child or State which would be furthered by use of the “preponderance” standard or justify the increased likelihood of erroneous decisions concomitant with its use.
Those cases which articulate the applicable standard of proof in private visitation disputes are consistent with the conclusion that more than a mere “preponderance of the evidence” is appropriately demanded when such a complete break in the parent-child relationship is at issue. In contests between custodial and noncustodial parents, the Fourth Department requires “substantial” and “convincing”[6] evidence and “compelling reasons”. (Chirumbolo v Chirumbolo, 75 AD2d 992, 993, supra; Farhi v Farhi, 64 AD2d 840, supra; Hotze v Hotze, 57 AD2d 85, mot for lv to app den 42 NY2d 805, supra; Herb v Herb, 8 AD2d 419.) It is because “[t]he sweeping denial of the right of a noncustodial parent to visit or see the child ‘is such a drastic remedy’ ” that the court sets the standard of proof at this level. (Farhi v Farhi, supra, p 842.) For the same reason, the Second Department has also concluded that the denial of the right of a parént to see his child should be based on *851 “substantial evidence”. (Kresnicka v Kresnicka, 42 AD2d 607.) In Matter of Doe v Doe (86 Misc 2d 194, 197, supra), the Family Court stated that the person seeking such an order “bears a heavy burden of proof to establish convincingly” its justification. That court further stated (p 197) that “[visitation must be carefully protected, not only as a phase of the parent’s rights to the custody of his child, but also as a phase of the developing body of children’s rights.”
For the foregoing reasons, the court concludes that a standard equivalent to “clear and convincing” is the appropriate one to be applied where suspension of a parent’s right to visit with a child who has been removed from home by the State is in issue. This higher standard of proof has been variously phrased by New York courts in different contexts. (See Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219-220; Matter of Eichner [Fox], 73 AD2d 431, 469, supra.) Whether the formulation here be “clear and convincing evidence” or “substantial and convincing evidence,” as suggested by the cases involving private visitation disputes, is of less import than the function of the standard. As expressed recently by the Court of Appeals, “the evidentiary requirement ‘ “operate[s] as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory.” ’ ” (Backer Mgt. Corp. v Acme Quilting Co., supra, p 220 [quoting Southard v Curley, 134 NY 148, 151].)
Implicit in the foregoing is rejection of the argument that since the “preponderance” standard is used in child protective proceedings, no more is necessary here. Suspension of all contact between a child and parent is a step beyond removal from the home and thus an even greater intrusion into the parent-child relationship. The fact that the “preponderance” standard is permissible for the lesser intrusion does not in itself argue for its applicability where the greater intrusion is being sought.
Nor is the fact that the parent-child relationship can be permanently severed under State law by a preponderance of the evidence[7] ultimately persuasive. The straightfor *852 ward nature of the factual issues involved in the first stage of abandonment and permanent neglect cases contrasts substantially with the nature of the issues involved in a suspension of visitation contest. The abandonment and permanent neglect statutes (Social Services Law, § 384-b, subd 5, par [a]; subd 7, par [a]) specify that the failure of the parent to perform certain acts despite the existence or absence of other acts on the part of the agency constitutes the predicate upon which termination of parental rights ultimately rests. While some interpretation. of the facts may be called for, the factual issues on the whole are readily resolvable. In contrast, the ultimate question in a suspension of visitation dispute, the best interests of the child, turns largely upon the interpretation of the facts presented, particularly when the risk of emotional harm is alleged. For example, in the case at bar, the court is asked to make a determination of the children’s best interests based principally on their reactions to the respondent mother and on the argument that those reactions indicate they are being harmed by the contact. In a permanent neglect or abandonment case, a best interests determination is made only after the factual predicate specified by the Legislature has been established. (Matter of Sanjivini K., 47 NY2d 374.) In a suspension of visitation case, that determination is made in the absence of any factual predicate specified by the Legislature. This difference in the nature of the evidence assessed, in the absence of legislative direction, calls for evidence of a substantial and convinciñg nature to mitigate the danger of overly subjective and inconsistent decisions.[8]
Upon consideration of all the evidence (detailed.in findings of fact filed separately), the court concludes that it has not been established by substantial and convincing evidence that the children’s best interests require suspension of respondent’s visitation rights to protect them from the *853 risk of emotional or physical harm. In so holding, the court does not countenance respondent’s conduct on the last day of the N.Y.F.H. program, but does consider that it falls into the category of an isolated instance of parental incapacity. Nor does the court overlook the respondent’s need to acquire greater mothering skills or the children’s evident need now for therapeutic intervention to assist them in adjusting to resumed visitation.
Accordingly, the Commissioner of Social Services and Catholic Home Bureau are directed to formulate a plan designed to overcome the afore-mentioned obstacles and facilitate visitation between respondent and the children to the end that respondent may have a genuine opportunity to re-establish the family bond. The plan is to be submitted in writing to respondent’s attorney on or before December 4,1980, and to the court on December 18, 1980.

. See Matter of Vincente V., NYLJ, May 6, 1980, p 11, col 1.

. In Matter of Gandy (supra), the First Department reversed a Family Court order for continued foster care, directed initiation of a termination of parental rights proceeding, and precluded parental visitation pending the outcome of that proceeding. According to the unpublished Family Court decision, the parent had had no contact with the children for over six years. There was thus substantial evidence that the parent had abandoned them and the court may well have concluded that a brief reappearance by her in their lives, if the termination proceeding were successful, would have been emotionally damaging to them.
In Matter of Loretta Ann M. (supra), the court reversed a Family Court order providing for supervised visitation with children in placement in a child protective proceeding and applied a “best interests” standard without specifying any requirement of a showing of potential physical or emotional harm. The evidence established that the mother had taught one child how to perform sodomy on her father and had kept all the children in a car with a male for an entire weekend. Although there was no specific indication in the opinion that physical or emotional harm would have come from supervised visitation at the agency office as had been ordered, there was psychiatric testimony that further contact with the mother would not be in the children’s best interests. Given the universal taboo against incest, and the fact that one child was instructed in this behavior by the mother, it may well have been concluded that further contact with the mother would be psychologically damaging to the children.

. See 18 NYCRR 428.3 (e) (2) (i) (b).

. See, e.g. Woodby v Immigration Serv., 385 US 276 (deportation); Schneiderman v United States, 320 US 118 (denaturalization); but see Vance v Terrazas, 444 US 252, discussed in n 7, infra.

. The requirement that the evidence be “convincing” was in the context of a dispute about visitation by grandparents. Since the rights of grandparents vis-á-vis a child are inferior to those of a parent, the court would logically require no less evidence in the case of a parent.

. Social Services Law, § 384-b, subd 3, par (g); Family Ct Act, § 622. The constitutionality of the preponderance standard in termination cases has never been decided by the Court of Appeals, but has been upheld in Matter of John AA. (75 AD2d 910); and Matter of Anthony “CC” (48 AD2d 415, mot for Iv to app den 37 NY2d 708). The issue is currently before the United States Supreme Court in Doe v Delaware (No. 79-5932, 48 USLW 3632).

. A similar distinction was the basis of the holding in Vance v Terrazas (444 US 252, supra) where the Supreme Court sustained expatriation based on a preponderance of the evidence and distinguished such cases as Woodby v Immigration Serv. (385 US 276, supra) (deportation), and Schneiderman v United States (320 US 118, supra) (denaturalization) in which it had held that the “clear and convincing” standard was required. The distinction was predicated on the fact that in Terrazas (supra) there was both a legislative judgment that the preponderance standard sufficiently protected the interest of the individual and a stringent substantive standard which provided additional protection for the individual, factors absent in Woodby (supra) and Schneiderman (supra).