**In the Matter of A.B., A minor child under the age of eighteen (dob: 12/14/78).**

No. S–3304.

Supreme Court of Alaska.

April 27, 1990.

Dan N. Branch, Asst. Atty. Gen., Ketchikan, and Douglas B. Baily, Juneau, for appellant Dept. of Health and Social Services, Div. of Family and Youth Services, State of Alaska.

Michael J. Zelensky, Whittaker & Zelensky, Ketchikan, for appellee, father of A.B.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. FACTS.

This appeal involves a superior court's decision on Annual Review of a placement order in a Child In Need of Aid (CINA) proceeding.[1]

A.B., a female minor child, and her brother C.B., were first placed in the custody of the Department of Health and Social Services, Division of Family and Youth Servic-

---

1. The Division makes yearly reports regarding children placed in its custody pursuant to AS 47.10.080(f), 47.10.083, and CINA Rule 19(a). The superior court must annually review a decision awarding custody of a minor to the Division to determine whether such custody remains in the child's best interests. AS 47.10.-080(f). This appeal pertains only to A.B., not her siblings.

es (hereinafter "Department" or "Division"), in 1984 due to neglect. In November 1984, the children were returned to their father, B. In January 1987, the children were returned to state custody when their father was hospitalized for mental health problems and was evicted from the family's apartment. The children were again returned to their father in February 1987, but B. was again hospitalized in April of that year at the Alaska Psychiatric Institute. At this time it was determined that B. was an intravenous drug user. Eventually, the children were again returned to their father, but he again asked the Department to take them into custody, where A.B. and C.B. have remained to the present date. This appeal relates to visitation between A.B. and B.

On February 15, 1989, the Department filed its Annual Review Report *In the Matter of A.B.* with the superior court. In an accompanying letter, a social worker recommended that visitation between A.B. and B. be discontinued until the latter demonstrated that he was enrolled in certain treatment programs and that he had participated regularly for three months. On February 16, 1989, the superior court entered an order requiring the Department to permit visitation between A.B. and B. at the St. Johns Episcopal Church, under the supervision of Father Herbst, where visitation had been held for several weeks prior to the Annual Review.

Subsequently, A.B.'s guardian *ad litem*, Corrine Radergraham, filed a report recommending that visitation between father and daughter be reduced and limited to a weekly "therapeutic session" at the offices of Dr. Stella Sallee. B. did not oppose the recommended therapeutic visitation, but took the position that this should not constitute the only weekly visitation session; B. argued that therapeutic visitation should supplement rather than replace visitation under the supervision of Father Herbst. The superior court then held an evidentiary hearing concerning the issues raised by the Radergraham report.

Testimony conflicted as to the potential for emotional harm to A.B. as a result of visits with her father. For the Department, A.B.'s foster parents, Dr. Sallee, a therapist and a social worker all testified that visitation between A.B. and B. should be "very carefully supervised." It was alleged in particular that by bringing up the subject of A.B.'s mother, B. sometimes caused A.B. to regress in her treatment; that the visits caused A.B. "stress;" and that limiting visits to weekly encounters in the presence of Dr. Sallee would alleviate these problems.

For his part, B. testified to his participation in rehabilitation counselling programs; that visitations under the supervision of Father Herbst had been going smoothly; and that A.B. had "stabilized" in the course of these supervised visitations. In this regard, the Department's witness, therapist Elizabeth McLaughlin, testified that emotionally and psychologically things had "evened out" with A.B. for the last three or four months. A.B.'s foster mother testified that A.B. had been doing well since December; and the social worker testified that A.B. had stabilized during the last three months. Dr. Sallee also noted recent stabilization in A.B. On the basis of this evidence B. makes the argument that "[i]t was unusual that the Department should request therapeutic visitation since, according to witnesses at this hearing, all indications were that in recent months visitation had been going well."

The superior court thereafter issued a Memorandum and Order on Annual Review which provided for therapeutic visitations supervised by Dr. Sallee, and maintained the pre-existing weekly visitation schedule under the supervision of Father Herbst. The Department then moved for partial reconsideration, and in response the superior court entered an Oral Statement of Decision denying the motion for reconsideration. The superior court denied the Department's motion seeking a stay, and thereafter this court granted a stay pending resolution of this appeal.[2]

2. Our order stayed the superior court's determination regarding B.'s visitations with A.B. under the supervision of Father Herbst as well as the court's release of information.

## II. ISSUES.

The Department raises three contentions in this appeal. The Department argues that the superior court erred in refusing to limit visitation to weekly therapeutic visits under the supervision of Dr. Sallee; that the superior court exceeded its statutory authority or violated privacy rights protected by the Alaska and United States constitutions in requiring that there be sharing of information among the parties to this case and all agencies providing services to them; and that the superior court exceeded its statutory authority when it ordered the Department to inform B. where to go for recommended urinalysis and counselling.

## III. DISCUSSION.

### A. *Was the Superior Court's Order Refusing to Restrict Visitation Supported by a Preponderance of the Evidence?*

■■■ The Department contends that the superior court's order continuing visita- tion under the supervision of Father Herbst was not justified by the evidence. We review this decision to determine whether it is supported by a preponderance of the evidence.[3]

B. argues that the superior court's decision respecting visitation should be affirmed on the ground that the Department has failed to show by a preponderance of the evidence that its proposed restriction on father-daughter visitation serves A.B.'s best interests. We agree. Although the Department presented voluminous (and largely cumulative) evidence to the effect that visits between A.B. and her father sometimes caused the child to become destabilized, or caused her stress, all of the State's witnesses also testified to the fact that A.B. has been stabilizing and improving significantly over the two to three months prior to the hearing, roughly the period during which she has been visiting with B. under the supervision of Father

---

**3.** The Department has statutory authority to determine the placement of minors in its legal custody and enjoys expertise and discretion in making these determinations. *See* AS 47.10.-084(a) (Department is responsible for, *inter alia,* "the determination of where and with whom the child shall live"). Moreover, we have often emphasized that in enacting title 47, the legislature gave primary authority over child placement to the Department, not the courts. *E.g., Matter of B.L.J.,* 717 P.2d 376, 378–80 (Alaska 1986); *K.T.E. v. State,* 689 P.2d 472, 478 (Alaska 1984); *A.A. v. State,* 538 P.2d 1004, 1005 (Alaska 1975); *B.A.M. v. State,* 528 P.2d 437, 438 n. 3 (Alaska 1974).

The superior courts are authorized to review the Department's placement and visitation decisions under the abuse of discretion standard to determine whether the Department's decisions are in the best interests of the child. *See D.H. v. State,* 723 P.2d 1274, 1276 (Alaska 1986); *Matter of B.L.J.,* 717 P.2d at 380–81. In turn, we review decisions of the superior court restricting (but not terminating) parental visitation to determine whether the superior court's decision is supported by a preponderance of the evidence. *See D.H. v. State,* 723 P.2d at 1278 (Rabinowitz, C.J., joined by Matthews, J., dissenting) (in cases of less than complete curtailment of visitation, supreme court review is limited to a determination whether the superior court's order is supported by a preponderance of the evidence); *K.T.E. v. State,* 689 P.2d at 478 n. 11 (holding that the clear and convincing evidence standard applies when parental visitation is completely eliminated, but reserving by implication the pre- ponderance of the evidence standard for cases in which visitation is merely curtailed) (citing *In re Pablo C.,* 108 Misc.2d 842, 439 N.Y.S.2d 229, 232–34 (Fam.Ct.1980) (when visitation is to be completely denied, appellate court should require clear and convincing evidence supporting superior court's decision); *In re Rhine,* 310 Pa.Super. 275, 456 A.2d 608, 612 (1983) (same); M. Garrison, *Why Terminate Parental· Rights?* 35 Stan.L.Rev. 423, 486–87 and n. 284 (1983) (clear and convincing evidence is necessary to sustain a decision completely ending visitation for any appreciable length of time, but preponderance of evidence standard applies when visitation is merely restricted)). *See also* CINA Rule 18(c) (Department must bear burden by clear and convincing evidence before parental rights can be completely terminated). In short, we review the superior court's decision not to restrict visitation between A.B. and her father under the preponderance of the evidence standard.

As to matters of statutory and constitutional interpretation, and in particular in reviewing the superior court's rulings (1) ordering the disputed records release, and (2) compelling the Department to identify specific treatment or monitoring programs for B., this court's independent judgment is its guide. *See, e.g., Norton v. Alcoholic Beverage Control Board,* 695 P.2d 1090 (Alaska 1985) (this court is free to substitute its judgment as to issues of statutory interpretation); *K & L Distributors v. Murkowski,* 486 P.2d 351, 357 (Alaska 1971) (this court reviews judgments below *de novo* to the extent that constitutional standards require).

Herbst. Thus the superior court's decision[4] finds ample support in the record.

B. *Did the Superior Court Exceed its Statutory Authority, or Violate the Alaska or United States Constitutions, in Ordering the Sharing of Records Among Parties and Agencies Involved in the Case?*

The superior court's March 1, 1989 Memorandum and Order on Annual Review contains the following provision:

This order shall serve as a release of information between all parties and programs providing services to the minor and the minor's family on one hand and the Division of Family and Youth Services and the court on the other hand.[5]

■ The Department argues that since the release order is prospective in nature,

"it amounts to an ongoing release order that fails to provide for the privacy protection of AS 47.10.090(a)." In response, B. argues that "the superior court has discretion to disclose records under AS 47.10.-090." AS 47.10.090 provides, in relevant part:

Records. (a) The court shall make and keep records of all cases brought before it. The court's official records may be inspected only with the court's permission and only by persons having a legitimate interest in them. *All information and social records pertaining to a minor and prepared by an employee of the court or by a federal, state or city agency in the discharge of the employee's or agency's official duty ... are privileged and may not be disclosed*

---

4. In its March 1, 1989, Memorandum and Order on Annual Review, the Superior Court observed:

Elizabeth McLaughlin, Robin Boatwright, and Barbara Brown all testified to difficulties surrounding visitation and there is no question but that the visits caused a great deal of turmoil in [A.B.'s] life. However, all of the witnesses testified to objective signs of [A.B.'s] upset over the visits that have largely been absent over the past two or three months. There does not seem to be any reason to suspend those visits at this time.

5. In a footnote, the superior court chose the following terms to explain its order:

In view of the obvious lack of communication between the agencies as opposed to the private practitioners involved in this case, the court would like to emphasize that this is an honest to God release of information. The court expects regular *written* reports to social workers. Until the next review hearing, those reports will be monthly as to all matters for which reports are required in the body of this order. The Division of Family and Youth Services *will* provide copies of those reports to counsel and to the GAL *as they are received.*

(Emphases in original.) In its March 13, 1989 Oral Statement of Decision clarifying the March 1 Order and responding to the Department's motion for reconsideration, the superior court further explained:

The motion first seeks reconsideration of paragraph one of the order, that part of it specifically that provides that the order is a release of information between all persons and programs providing services to the minor and the minor's family. The motion requests that the court reconsider that part that requires the Division of Family and Youth Ser-

vices to provide discovery to agencies and persons listed in paragraph, I don't know what paragraph they are talking about, it just stops, the motion does. But, the order, in footnote two, is very clear. The hearing in this case demonstrated what is all too often the case in these child protection cases, and that is that the Division of Family and Youth Services does not talk to the Gateway Center for Human Services or to the private psychologists that they retain to do work on behalf of these children, or to the alcohol people, or to the parenting people, or to anybody else. And nobody talks to them. Consequently, nobody knows what's going on. A classic example of that was Ms. Brown's report in this case. As I mentioned in the memorandum and order, when I asked her at the beginning of the hearing if she had any update to her report, she said no. Her own testimony disclosed that she had since she wrote the report and made recommendations been talking to some people, she didn't have any reports, but she had been talking to people, and she told me that her verbal information was that three of the four reasons that she gave for terminating [B.'s] visitation didn't really exist. In other words, he was doing or willing to do what the department wanted him to do. So, I want ever to be real clear in this case from now on. I believe that I have the authority to require these agencies to report to one another and to report to the court and I expect to have that done on the month as I asked it to be done in the order and if you don't want to do that I am going to hold you in contempt. I am sick and tired of wasting my time and the parent's time and the kid's time in these cases when you people won't do your job and I don't think you've been doing your job in this one.

*directly or indirectly to anyone without the court's permission.* However, a state or city law-enforcement agency shall disclose information regarding a case which is needed by the person or agency charged with making a preliminary investigation for the information of the court.... Within 30 days of the date of a minor's 18th birthday or, if the court retains jurisdiction of a minor past the minor's 18th birthday, within 30 days of the date on which the court relinquishes jurisdiction over the minor, the court shall order sealed all the court's official records, information and social records pertaining to that minor, as well as records of ... criminal proceedings against the minor and punishments assessed against the minor except for traffic offenses. A person may not use these sealed records for any purpose except that the court may order their use for good cause shown or may order their use by an officer of the court in making a presentencing report for the court.

(Emphasis added.)

We do not agree with the Department's view that the superior court's records release order constitutes a violation of AS 47.10.090(a), or the regulations promul-

gated pursuant to that statute.[6] Both AS 47.10.090(a) and its implementing regulations contain explicit grants of authority to trial courts to effect records releases.[7] Because AS 47.10.090(a) expressly empowers courts to order records released, we reject the Department's contention that the records release order at issue here is invalid.

Although we have concluded that the records release order is not *per se* invalid, we emphasize that we construe the order narrowly. We interpret the order as mandating records release only among and to "parties and programs providing services to the minor and the minor's family ... and the ... [Division] and the court." We further read the superior court's release order as requiring any recipient of released information to maintain confidentiality standards comparable to those found in AS 47.10.090 and the applicable regulations. We also note that the Division has the ability to move the superior court for an order modifying its release order in regard to any particular contemplated release, or in light of a change in circumstances warranting modification.

 The Department argues in the alternative that the superior court's records

---

**6.** *See, e.g.,* AS 47.10.070 (hearings closed to public); 7 AAC 36.030 (regarding disclosure of information); 7 AAC 36.060 (governing disclosure of information to a parent of a child).

 7 AAC 36.030 provides:

PROHIBITIONS AGAINST DISCLOSURE OF INFORMATION.

 (a) The division shall limit the use of all safeguarded information to purposes directly connected with the administration of family and youth services programs.

 (b) The division may not disclose any safeguarded information obtained by a representative, agent, volunteer, or employee of the division in the course of discharging the duties of the division to anyone outside of the department, other than in the administration of the family and youth services programs and as provided in this chapter.

7 AAC 36.060 provides:

DISCLOSURE OF INFORMATION TO A PARENT OF CHILD.

 (a) The division shall disclose information concerning a child client receiving services, acquired while the child was the subject of a child-in-need-of-aid or delinquency petition or was a ward of the state, to the parent or guardian upon the parent's request only:

 (1) when the information has been procured as part of a court ordered evaluation program;

 (2) when the information is necessary to the parent for the parent's participation in court-ordered treatment, if the right of privacy of the child is not infringed;

 (3) when the information is necessary to allow the parent to exercise residual parental rights, as provided under AS 47.10.084(c); or

 (4) when the court has ordered that the information be disclosed.

 (b) The division shall disclose information concerning a child client receiving services, acquired while the child was not the subject of a child-in-need-of-aid or delinquency petition and was not a ward of the state, to the parent, upon the request of the parent, if the right of privacy of the child is not infringed.

**7.** See, in addition to AS 47.10.090(a), 7 AAC 36.060(a)(4). That courts have discretion to order records disclosed in a Child in Need of Aid Proceeding has already received judicial acknowledgement. *See Clifton v. State,* 758 P.2d 1279, 1284 (Alaska App.1988); *see also W.M.F. v. Johnstone,* 711 P.2d 1187 (Alaska App.1986).

release order violates A.B.'s right to privacy under the United States and Alaska constitutions.[8] The Department claims that we must invalidate the superior court's release order on its face because "it was issued without a finding of ... constitutionality." This is not the law.[9]

■ In our view the Department's constitutional privacy arguments have not been properly preserved for appellate review. These arguments were not raised before the superior court, and were not advanced in the State's post-order motion for reconsideration. Given these circumstances, our precedents indicate that the Department's arguments should be considered waived. We so hold. *See, e.g., State v. Northwestern Const., Inc.,* 741 P.2d 235, 239 (Alaska 1987); *Williams v. Alyeska Pipeline Service Co.,* 650 P.2d 343, 351 (Alaska 1982); *Young v. Williams,* 583 P.2d 201, 206 (Alaska 1978); *Saxton v. Splettstoezer,* 557 P.2d 1126, 1127 (Alaska 1976).

■ In addition to our holding of waiver, we are of the view that the Department's constitutional attack on the superior court's records release order lacks merit. In analyzing asserted constitutional rights of privacy, the applicable legal principles are as follows. The federal right of privacy derives from a broad reading of the due process clause of the fourteenth amendment, *see, e.g., Carey v. Population Services International,* 431 U.S. 678, 684, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675 (1977), or from "emanations" from other constitutional provisions, *see, e.g., Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The right to privacy in Alaska is expressly guaranteed by article I, section 22 of the Alaska Constitution, which states

in relevant part: "The right of the people to privacy is recognized and shall not be infringed."

■ Although neither federal nor state rights of privacy are absolute, it is part of the judicial function to ensure that governmental infringements of privacy are supported by sufficient justification. Under federal precedent it must be found that the privacy invasion is necessary to a compelling state interest, and that the governmental regulation does not sweep too broadly. *See, e.g., Griswold,* 381 U.S. at 485, 85 S.Ct. at 1682; *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973); *Carey,* 431 U.S. at 685, 97 S.Ct. at 2016. Under the Alaska Constitution, the required level of justification turns on the precise nature of the privacy interest involved. In absence of a suspect classification or impairment of a fundamental right, we have required that there be a "fair and substantial relation" between the means chosen and a legitimate governmental purpose. *Isakson v. Rickey,* 550 P.2d 359, 363 (Alaska 1976). Where fundamental rights are at stake, the State's interest in invading privacy must be compelling. *Id.* Thus, to determine the validity of the release order, we must consider both the nature and the extent of the privacy invasion, and the strength of the state interest in requiring disclosure. *See generally Falcon v. Alaska Public Offices Comm'n,* 570 P.2d 469, 475 (Alaska 1977).

■ The release order at issue here survives constitutional attack under either standard. The Department's interest in the confidentiality of A.B.'s records is not fundamental. CINA Rule 22 provides:

Rule 22. Confidentiality.

---

**8.** As A.B.'s legal guardian, the Department has standing to assert this challenge in the interest of protecting A.B. *See generally Falcon v. Alaska Public Offices Com'n.,* 570 P.2d 469, 474–76 (Alaska 1977).

**9.** We may affirm a lower court's decision without embracing the reasoning employed in it. *See, e.g., Kennecorp Mortgage & Equities, Inc. v. First Nat'l Bank,* 685 P.2d 1232, 1237 n. 3 (Alaska 1984) (citing *Carlson v. State,* 598 P.2d 969, 973 (Alaska 1979)) (we may uphold the trial court if any basis for doing so appears from the

record); *Rutherford v. State,* 605 P.2d 16, 21 n. 12 (citing *Stordahl v. Government Employees Ins. Co.,* 564 P.2d 63, 67 n. 16 (Alaska 1977)) (this court may affirm a trial court's ruling even on different grounds from those advanced by the trial court as the basis for that ruling); *Fireman's Fund American Insurance Companies v. Gomes,* 544 P.2d 1013, 1017 n. 12 (Alaska 1976) (we will affirm correct decision of superior court regardless of whether we agree with the reasons advanced).

*The records of child in need of aid proceedings are confidential.* Only parties and their attorneys may have access to the court file *except as otherwise authorized by statute or court order for good cause shown.* Parties and their attorneys shall maintain the confidentiality of all information in the court's file. Other persons authorized access to the file are subject to such conditions as the court may set with notice to the parties. The name or picture of a child who is the subject of a CINA proceeding may not be made available to the public unless authorized by court order accompanied by a written statement reciting the circumstances which support such authorization.

(Emphases added.) Based on CINA Rule 22 and the language of AS 47.10.090(a), *supra,* we conclude that the superior court was not without authority to effect the records release ordered, so long as there was a substantial relationship between the release and a legitimate governmental interest. *See, e.g., Isakson,* 550 P.2d at 363. The goals of the release order—to facilitate an expeditious and comprehensively monitored reunion of A.B. and her father, and to preserve the potential for a normal relationship between them, are legitimate State interests substantially effectuated by the release order.

10. Alaska Statute 47.10.080(c)(1) provides:
Sec. 47.10.080. Judgments and orders.
. . . .
(c) If the court finds that the minor is a child in need of aid, it shall
(1) order the minor committed to the department for placement in an appropriate setting for a period of time not to exceed two years or in any event past the date the minor becomes 19 years of age, except that the department may petition for and the court may grant in a hearing (A) two-year extensions of commitment which do not extend beyond the minor's 19th birthday if the extension is in the best interests of the minor and the public; and (B) an additional one-year period of supervision past age 19 if the continued supervision is in the best interests of the person and the person consents to it; the department may transfer the minor, in the minor's best interests, from one placement setting to another, and the minor, the minor's parents or guardian, and the minor's attorney are entitled to reasonable notice of the transfer; . . . .

Nor do we believe the release order violates the privacy protections that are found in the fourteenth amendment. The State's interest in maintaining family relationships for A.B. is sufficiently compelling, and the order's scope, limited to agencies directly involved in providing resources to the parties in this case, is sufficiently narrow to pass federal constitutional muster.

C. *Did the Superior Court Exceed its Statutory Authority in Ordering the Department to Identify Treatment Facilities for B.?*

 The Department's final specification of error is that the superior court exceeded its jurisdiction in (1) requiring the Department to designate a parenting class and urinalysis center for B., and in (2) ordering it to encourage contacts between A.B. and her mother. According to the Department, "These provisions [of the superior court's order] amount to a court ordered post disposition treatment plan and exceed the jurisdiction granted to the superior court by AS 47.10.080(c)." [10]

Specifically, the Department objects to paragraphs 6, 7, and 8 of the superior court's March 1, 1989 Order.[11] In support of its position, the Department relies solely upon *Matter of B.L.J.,* 717 P.2d 376 (Alaska 1986). This reliance is misplaced.

11. These paragraphs of the superior court's Order read as follows:
6. The Division of Family and Youth Services will designate a parenting class for [B.] by March 10, 1989. That designation will be in writing to [B.], with a copy to the court. [B.] will be enrolled in that class by March 21, 1989, and will attend until it is completed.
7. The Division of Family and Youth Services will designate a facility or agency where [B.] can furnish samples for urinalysis by March 10, 1989. [B.] will furnish at least one urinalysis to the Division per month at his expense. The Division may request more frequent urinalysis at its expense.
8. The Division of Family and Youth Services should continue to encourage contacts and visits between [A.B.] and her mother that are consistent with the other requirements of this order.
(Footnote omitted.)

In *B.L.J.*, the superior court issued an order giving custody of B.L.J. and his siblings to the Department and ordering a specific post-disposition placement with the childrens' mother. *See B.L.J.*, 717 P.2d at 377. The Department appealed this order as one exceeding the legal authority of the court under the childrens' code. We reversed, finding that the superior court lacked authority in a child in need of aid case to order specified placement following disposition because the legislature intended for the Department, not the court, to make such placement decisions. *Id.* at 380.[12] The Department argues that paragraphs 6, 7, and 8 of the order below are analogous to the post-disposition placement order at issue in *B.L.J.*

However, *B.L.J.* is distinguishable from the case at bar. In *B.L.J.*, the superior court had directed the Department to make a particular placement decision, whereas in the instant case there is no suggestion that the superior court ordered the Department to make any particular placement or post-disposition treatment decision. Here, the Department had proposed a check-list of required treatments for B. The superior court's order merely requires the Department to implement the indicated course of treatment. The superior court articulated the basis for its order in the following terms:[13]

> The fifth item relates to paragraph seven, requiring ... the division to designate a facility or agency where ... B. can furnish samples for urinalysis, and paragraph eight of the order. Paragraph eight regards visitation. Let me deal with paragraph seven. *The Division of Family and Youth Services* in their report, before they adopted the guardian's position, *recommended that the court terminate visitation between ... B. and his daughter until he had provided documentation of three months attendance at AA and NA*

> *meetings, completion of a parenting class (that was their suggestion, not the court's), and regular UAs,* and then a report from a therapist documenting that he had dealt with certain issues. What the state seems to be arguing now is that the court cannot require the Division of Family and Youth Services to do certain things in these cases. Without reaching that issue, since that is simply not this case, those suggestions came from the division and I believe that I can require them to designate a place where they want ... B. to do the UAs. *The Division said that that is a requirement.* They want him to do those so they can monitor his alcohol consumption or abuse and his abuse of any other drugs. *That, as far as I know, is part of the program that they are recommending.* It's certainly part of the program that I am adopting. So, that part of the order that tells them to designate the place where he is supposed to do that is entirely consistent with their plan and they will do it. The same holds true for the parenting class. *They recommended the parenting class.* It seems to me that that was a good recommendation. I don't think they can just willy-nilly change that. So, when I ask them to designate the place where he can go take that parenting class, I am not even telling them to do any part of the program. *I am just telling them to tell him where to do it and* I expect them to do that pretty quickly so he can get started.

(Emphases added.)

As the above-quoted portion of the superior court's Oral Statement of Decision makes clear, it did not exceed its authority by issuing its March 1 and March 13 orders; indeed, the superior court did not alter the Department's placement and treatment prerogatives or any other aspect of the family's post-disposition treatment in any way. The court merely ordered the

---

**12.** As noted above, *see infra* n. 3, AS 47.10.-084(a) gives primary custodial control over minor wards of state to the Department, not the courts.

**13.** The superior court did not address paragraph six of its March 1 Order (requiring the Division to designate a Parenting Class for B.) separately in its March 13 Oral Statement of Decision because the Division failed to move for reconsideration of the point.

Department to implement its chosen programs.[14]

Paragraph 8 of the superior court's March 1, 1989 Order, providing that "The Division of Family and Youth Services should continue to encourage contacts and visits between [A.B.] and her mother that are consistent with the other requirements of this order," might arguably stand on a different footing, since it at first appears to be a judicial supplement to the Department's post-disposition program, in that the Department might not have taken the initiative in making this recommendation. Nonetheless, we are not persuaded that paragraph 8 should be vacated. First, paragraph 8 merely orders the Department to continue to encourage visitation between A.B. and her mother; it thus can be construed as approving a pre-existing Departmental decision, rather than as a new post-disposition decision created by the superior court and imposed upon the Department. Viewed in this light, paragraph 8 is similar to paragraphs 6 and 7, and does not invade the Department's sphere of decisionmaking. Second, unlike all the other paragraphs in the superior court's March 1 Order, paragraph 8 is not mandatory in its terms.

AFFIRMED.[15]

---

**14.** The Department suggests that the superior court's above-discussed orders threaten A.B.'s best interests by impeding the flexibility inherent in Departmental decisionmaking: "When the court sets out a specific disposition plan," the Division argues, "the parties must return to court each time the plan becomes outmoded...." As should be clear from the foregoing discussion, with respect to the parenting class and urinalysis orders, the superior court has not in any sense mandated a particular post-disposition plan. Rather, the Department itself devised the plan and may modify it as necessary; all the superior court's order imposes is a requirement that the Department implement its current plan in a non-dilatory manner, not that it may never modify that plan unilaterally should the need to do so arise. Therefore, paragraphs 6 and 7 of the March 1 Order do not exceed the jurisdiction of the superior court.

**15.** Our order of April 27, 1989, granting a stay of the superior court's visitation and release orders is hereby vacated.