879 P.2d 363 (1994)
E.T., Appellant,
v.
STATE of Alaska, Appellee.
No. A-5058.
Court of Appeals of Alaska.
August 12, 1994.
*364 Randall S. Cavanaugh, Anchorage, for appellant.
David L. Brower, Asst. Atty. Gen., Nome, and Charles E. Cole, Atty. Gen., Juneau, for appellee.
Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

OPINION
MANNHEIMER, Judge.
E.T. appeals the superior court's order committing him to the custody of the Department of Health and Social Services under AS 47.10.080(b)(3) (allowing the minor's placement outside the parental home in a non-institutional setting). We affirm.
E.T. was born in 1980. He first came to the attention of the juvenile authorities in August 1992, when he was charged with second-degree trespass. This charge was informally adjusted. Two months later, a charge of third-degree theft was also informally adjusted. Five months later, in March 1993, the Nome police responded to a report that several juveniles were shooting guns. They found bullet holes in the walls of nearby houses, in an entry door, and in a mini-van. The next day, a police officer interviewed E.T., and he admitted that he and some other boys had been drinking vodka and shooting rifles the day before. E.T. was eventually charged with, and admitted involvement in, two separate shooting incidents on March 25 and March 28, 1993.
E.T. was evaluated by Dr. Joe Bratton, a licensed psychologist. Dr. Bratton found that 13-year-old E.T. had "broad educational deficits", with educational skills equivalent to the second- or third-grade level. Psychological testing revealed that E.T. was functioning at "borderline to low-average mental ability"; even in his areas of strength (visual recognition, assembly, and motor coordination), "his scores were at best low-average". Dr. Bratton concluded that E.T. "appears to be exhibiting a number of symptoms of Fetal Alcohol Syndrome or [Fetal Alcohol Effect]". He recommended that E.T. be placed "in a treatment [setting] where he can better meet his needs for extra socialization training. Even a specialized foster home may not suffice[;] a group home may come closer [to what is needed]."
Elizabeth Hanson, a school psychologist with the Nome School District, supported Dr. Bratton's assessment. She reported that E.T. had been held back in school and had been participating in the "learning disabled" program since 1985. Ms. Hanson concurred that E.T. exhibited characteristics of fetal alcohol syndrome (FAS), including poor coordination, a short attention span, and behavioral and emotional difficulties.
Bonnie Thompson, the Kotzebue regional director for juvenile corrections and the juvenile probation officer who prepared the pre-disposition report, recommended that E.T. be placed in a group home where he could receive specialized treatment for fetal alcohol syndrome, with the ultimate goal of returning E.T. to his family. At the ensuing disposition hearing, the attorneys asked Ms. Thompson to elaborate on the treatment options available for E.T., both in Nome and in Fairbanks.
Thompson explained that the outlook for treating E.T. in his home town of Nome did not seem promising. Treatment for FAS was available in Nome, but on a limited basis. There were currently 200 people on the waiting *365 list for enrollment in the treatment program. The Nome mental health office also offered some FAS counseling, but that office had suffered staff turnover: the person who did the FAS counseling had left, so there was currently no one available to perform the treatment. Moreover, there was currently a vacancy in the Nome juvenile probation office. According to Thompson (who was temporarily also covering Nome), the Department of Health and Social Services had no immediate candidate to fill the Nome slot.
Fairbanks, on the other hand, had the Presbyterian "Hospitality House", a residential group home where children lived as a family unit with a resident "mother" and "father". Hospitality House employed behavior modification therapy as well as group and individual counseling. Thompson stated that the Department had placed several FAS juveniles at Hospitality House, and they had had a good rate of success; these juveniles had learned the life skills they needed to deal with their fetal alcohol syndrome (or fetal alcohol effect). However, Thompson conceded that one aspect of FAS treatment  the counseling of the child's family  would be more difficult if E.T. were moved to Fairbanks to reside at Hospitality House.
At the conclusion of the hearing, Children's Master Bradley N. Gater recommended that E.T. be placed in the custody of the Department of Health and Social Services under AS 47.10.080(b)(3), allowing the Department to place E.T. outside his parental home. Master Gater stated that he was hesitant to place a juvenile in a facility far from home, but he was convinced that E.T.'s disposition had to include treatment for his FAS symptoms. Master Gater declared that E.T. "shouldn't be [taken] out of [his] home unless necessary", but he agreed with the Department's recommendation that E.T. be placed in state custody and potentially placed outside his parental home: "I think you need the structure, I think you need the counseling, I think you need the setting to get you straightened out."
Shortly after the master issued his recommendation, E.T.'s attorney sought clarification. He asserted that the Department of Health and Social Services had given notice that they intended to place E.T. in Fairbanks at Hospitality House. E.T.'s attorney asked Master Gater to amend his recommendation to specify that E.T. should remain in Nome until it was affirmatively demonstrated that E.T. could not receive adequate treatment in Nome. In response, Master Gater issued the following supplemental recommendation:
1. That the least restrictive alternative to meet the juvenile's treatment needs and protection of the public is out-of-home placement in an appropriate non-secure placement, but that the court recommends to the Department that the juvenile remain in his present placement pending availability of an appropriate treatment program.
2. That determination of which facility is the least restrictive and otherwise appropriate will require assessment for fetal alcohol syndrome/effect.
3. That the Department has made reasonable efforts to allow the juvenile to remain at and return home.
Superior Court Judge Charles R. Tunley approved the master's findings and recommendation. A few days later, the Department of Health and Social Services placed E.T. at Hospitality House in Fairbanks.
When deciding the appropriate disposition of a juvenile delinquency matter, the superior court is obliged to choose "the least restrictive alternative disposition under AS 47.10.080(b) that addresses the juvenile's treatment needs and [that] protects the public". Alaska Delinquency Rule 23(d). On appeal, E.T. argues that the record does not support the superior court's finding that awarding custody to the Department under AS 47.10.080(b)(3) was the least restrictive dispositional alternative. He asserts that there is nothing in the record to indicate that E.T. "was a danger to the community" or that E.T. was "not amenable to treatment or probation in Nome". We disagree. The conduct that brought E.T. into the juvenile system demonstrated a danger to the public, and the facts presented at the dispositional hearing support the superior court's finding that E.T. could not obtain adequate evaluation, treatment, and supervision if he continued to reside with his parents in Nome.
*366 E.T. further argues that the Department never presented the superior court with an adequate assessment of E.T.'s problems, so that the court had no basis for concluding that it was necessary to place E.T. at Hospitality House instead of allowing E.T. to be treated in Nome. However, the decision of whether E.T.'s treatment should occur in a residential facility in Nome as opposed to Fairbanks was not a decision for the superior court.
Under AS 47.10.080(b) and Delinquency Rule 23(d), the superior court must decide among three alternatives: placing the minor in the legal custody of the Department but allowing him or her to remain in the parental home; placing the minor in the physical custody of the Department, excluding placement in closed facilities; or placing the minor in the physical custody of the Department and allowing placement in closed facilities. The superior court found that E.T. needed to be treated outside his home (the second alternative), and the record supports that finding. Having made this finding, the court was not at liberty to direct the Department to place E.T. at a particular residential facility. Rather, the decision of the minor's placement (whether at a facility in Fairbanks, a facility in Nome, or even a return to his parental home) is entrusted to the discretion of the Department. The superior court may review the Department's decision for abuse of that discretion, but the court may not usurp the Department's decision-making function or substitute its own view of the minor's best interests. Department of Health and Social Services v. A.C., 682 P.2d 1131, 1134-35 (Alaska App. 1984).
The superior court's disposition order is AFFIRMED.