STATE of Alaska, Appellant,

v.

E.E., Appellee.

No. A–5770.

Court of Appeals of Alaska.

March 15, 1996.

Karla Taylor–Welch, D. Rebecca Snow, Assistant Attorneys General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Gina M. Tabachki, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

BRYNER, Chief Judge.

E.E., a minor, was adjudicated a delinquent after admitting to a petition alleging that he had engaged in conduct that would have amounted to manslaughter if committed by an adult. Following a disposition hearing, Superior Court Judge Richard D. Savell ordered E.E. committed to the custody of the Alaska Department of Health and Social Services (the department) and placed on probation under the department's supervision for a period of two years, in accordance with AS 47.10.080(b)(3). In ordering this disposition, the superior court specifically directed that "[t]he child cannot be moved from his [current] placement ... without a court order unless the parties, in consultation with treatment providers, otherwise agree." The superior court further directed that selection of E.E.'s therapist be made by E.E.'s attorney and guardian ad litem and that "[t]he therapist will determine the scope and amount of therapy the child needs." The state appeals, contending that the superior court had no authority to direct E.E.'s placement or to delegate to persons outside the department any authority to make treatment decisions on E.E.'s behalf. We reverse.

As we recently pointed out in *R.I. v. State,* 894 P.2d 683, 686 (Alaska App.1995), "The superior court does not have unfettered dispositional power in children's cases; rather, the court's authority arises from, and is limited by, statute." *See also In re E.M.D.,* 490 P.2d 658, 660 (Alaska 1971). The pertinent statute here is AS 47.10.080(b), which provides the superior court with three basic choices in the disposition of a delinquent child: commitment to the department for

institutional detention (AS 47.10.80(b)(1)); release on probation to a parent or other suitable person, under the supervision of the department (AS 47.10.080(b)(2)); or release on probation to the custody of the department for placement in a nondetention setting (AS 47.10.080(b)(3)). When the court deals with a delinquent child, it must select among these three options. *See E.T. v. State,* 879 P.2d 363, 366 (Alaska App.1994) and Alaska Delinquency Rule 23(d).

All parties and the court in this case agreed on the third option, that is, release on probation to the custody of the department for non-institutional placement. This choice is covered by AS 47.10.080(b)(3), which authorizes the court to

> order the minor committed to the department and placed on probation, to be supervised by the department, and released to the minor's parents, guardian, other suitable person, or suitable nondetention setting such as a family home, group care facility, or child care facility, whichever the department considers appropriate to implement the treatment plan of the predisposition report; if the court orders the minor placed on probation, it may specify the terms and conditions of probation; the department may transfer the minor, in the minor's best interests, from one of the probationary placement settings listed in this paragraph to another, and the minor, the minor's parents or guardian, and the minor's attorney are entitled to reasonable notice of the transfer[.]

The language of this provision makes it clear that when a delinquent child is committed to the department for probationary supervision, the exercise of parental powers becomes the responsibility of the department, not the court: the minor is to be placed in "whichever [nondetention setting] the department considers appropriate[.]" AS 47.10.080(b)(3). Thus, having decided to commit E.E. to the department under subsection (b)(3), the superior court

> was not at liberty to direct the Department to place [him] at a particular residential facility. Rather the decision of the minor's placement . . . is entrusted to the discre-

tion of the Department. The superior court may review the Department's decision for abuse of that discretion, but the court may not usurp the Department's decision-making function or substitute its own view of the minor's best interests. *Department of Health and Social Services v. A.C.,* 682 P.2d 1131, 1134–35 (Alaska App.1984).

*E.T.,* 879 P.2d at 366.

Although the superior court does have authority to review the department's placement decisions, the disposition order in the present case cannot be characterized as an exercise of the court's review authority. E.E. was in the custody of foster parents in Fairbanks at the time of the disposition hearing. The predisposition report indicated that the department felt this to be "a desirable placement," but also felt E.E.'s "treatment needs would best be met in a residential setting." The department thus anticipated moving E.E. to a residential treatment program. But while the department clearly contemplated a move, it had not decided on the precise move to make. The department had evidently not yet formally authorized a change in placement, and no firm commitment or arrangements to move E.E. to any specific new home or facility had been made.

Accordingly, at the disposition hearing, Judge Savell was not called upon to review any specific decision to change E.E.'s placement. Rather, the judge issued a disposition order that attempted to head off a decision that he expected the department to make in the near future. Judge Savell did not purport to find that the department had abused its discretion in choosing a specific placement; instead, he ruled that the current placement was in E.E.'s best interest, that any decision to change placement would amount to an abuse of discretion, and that the department therefore had no discretion to change placement without consent of all parties or a prior court order. The disposition order effectively divested the department of its statutory authority to determine the appropriate nondetention setting for E.E.[1]

---

**1.** Decisions as to E.E.'s treatment were likewise     entrusted to the department upon E.E.'s commit-

Perhaps because Judge Savell recognized that a preemptive strike of this type might be beyond the ordinary scope of the court's authority in a delinquency proceeding, the judge expressly included in E.E.'s disposition order a finding that E.E. was not merely a delinquent minor, but also a child in need of aid (CINA). Yet this finding did not expand the superior court's powers of disposition. For the superior court enjoyed no greater authority to dictate the department's placement or treatment of children in need of aid than it did to dictate placement or treatment of delinquent minors. In the context of CINA proceedings, the supreme court has expressly held that "[t]he legislature has committed placement decisions to the Department's discretion. The various statutory provisions indicate that the Department, not the court, has expertise on the availability and suitability of placements for minors in its legal custody." *In re B.L.J.*, 717 P.2d 376, 380 (Alaska 1986) (footnote omitted); *cf. In re A.B.*, 791 P.2d 615, 622–24 (Alaska 1990). Hence, the disputed provisions of E.E.'s disposition order are not validated by the superior court's CINA finding.

Judge Savell also sought to justify his decision to curtail the department's future placement and treatment options by referring to the unique nature of E.E.'s case. The judge made clear his belief that, in view of E.E.'s unusual background and treatment needs it would be an abuse of discretion for the department to move E.E. from his current placement to a residential group setting. Upon reviewing E.E.'s case history, the judge also found that the department had repeatedly neglected E.E.'s case; based on this history, the judge expressed misgivings about the department's ability to make future decisions that would be in E.E.'s best interests. In entering the disputed order, Judge Savell specifically found that "[b]ased on the child's history of abuse and neglect, his adjudication, and the limited time available to provide him with essential treatment services, the court is compelled to make specific, restrictive, and protective findings."

Judge Savell's misgivings about the department's ability to further E.E.'s best interests are certainly understandable, and the judge's keen desire to intervene in E.E.'s best interests is highly commendable. We must nevertheless conclude that Judge Savell's concern for E.E.'s best interests did not empower the court to exercise powers that have been expressly reserved to the department; for "notions of benevolent protective policies cannot be used to validate departures from positive law relating to the adjudicative and dispositive phases of children's proceedings." *In re E.M.D.*, 490 P.2d at 660.

■ By no means do existing statutes leave the superior court powerless to ensure that the department's future treatment and placement decisions meet E.E.'s best interests. E.E. and his attorney are entitled to reasonable advance notice of any decision by the department to transfer him. AS 47.10.080(b)(3). Upon receiving notice, E.E. has the right to request judicial review of the department's decision. AS 47.10.080(f). The court may preserve the status quo pending review;[2] if the court ultimately determines that the department abused its discretion, it is empowered to set the department's decision aside. *See In re E.T.*, 879 P.2d at 366; *Department of Health and Social Servs. v. A.C.*, 682 P.2d 1131, 1134–35 (Alaska App. 1984).

What the court did in the present case, however, was beyond the proper scope of

ment under AS 47.10.080(b)(3). In this regard, AS 47.10.084(a) expressly provides that a commitment to the department under AS 47.10.080(b)(3) confers on the department "the responsibility of physical care and control of the child, the determination of where and with whom the child shall live, the right and duty to protect, train, and discipline the child, and the duty of providing the child with food, shelter, education, and medical care." The superior court had no authority to substitute its decisions for the department's with respect to E.E.'s future

treatment or to delegate to E.E.'s attorney or guardian ad litem the authority to exercise the department's treatment responsibilities.

2. We note, in this regard, the state's acknowledgement that the superior court "could have established a minimum period of notice to the parties before the department made any major, non-emergency changes in placement or treatment."

judicial authority. The superior court erred in issuing a disposition order that precluded the department from exercising its statutory duty to make decisions concerning E.E.'s placement and that transferred to others the department's statutory duty to make treatment decisions. The portions of the disposition order restricting the department's placement and treatment powers must be stricken.[3]

This case is REMANDED for modification of the disposition order as directed in this opinion.

**3.** In addition to challenging the actual directives in the disposition order that restrict the department's placement and treatment powers, the state appears to argue that various factual findings within the order addressing E.E.'s future best interests are also unauthorized. However, except insofar as these factual findings are incorporated as directives in the court's disposition order, they will have no binding effect on the department. Nor will they have preclusive effect on judicial review of future departmental decisions, for review of future decisions must necessarily be governed by the totality of the circumstances at the time of review, not at the time of disposition. Standing alone, without the force of an order compelling or precluding departmental action, the disputed factual findings merely reflect the court's current appraisal of E.E.'s situation; the court's current views may fairly be construed as recommendations by the court for E.E.'s future placement and treatment. As such, these findings are not inappropriate; they may, indeed, provide the department with useful guidance in its supervision of E.E.'s case.