OPINION OF THE COURT
Herbert B. Ray, J.
This case was initiated by application of the petitioner for visitation with his son at the prison where he is incarcerated. Respondent mother contests this request. She has custody of the parties’ 18-month-old son and asserts that father is not entitled to court-ordered visitation. Father is seeking an order *884 for fixed visitation rights in duration and frequency. At a minimum he requests four-hour visits bimonthly.
The circumstances presented in the instant case are not ordinary. Father has been convicted of three counts of felony assault. He has been sentenced to imprisonment for IV2 to 15 years. To deny father visitation, as mother urges, might effect a permanent denial to father of all rights to his son during the boy’s youth. Yet, the stressful and difficult emotional and physical life-style mother now faces, which includes her sole care of the parties’ child, is a direct result of father’s criminal conduct. This court is certainly mindful that this ultimate visitation decision will impact and affect the child’s life on a permanent basis.
Although an incarcerated parent does not forfeit his privilege to exercise his right to visitation merely as a result of his status as prisoner, such entitlement to visitation is not absolute. Is it enough to deny the imprisoned father’s right to visit, if, in the opinion of this court, there is a possibility, however slight, that harm may come to the child by the granting of such right? (See, Matter of Bernstein, 251 App Div 836 [1937].) Or, is father’s parental right to visit protected to such extent that "even where there are realistic fears of harm” severance of his relationship with his child is too drastic a remedy? (See, Matter of Doe v Doe, 86 Misc 2d 194, 204; Matter of Marciano v Marciano, 56 AD2d 735, 736 [1977].) This court interprets the applicable law[1] to provide that only in very extreme circumstances is a trial court allowed to permanently deprive a parent of visitation. The denial of visitation to a noncustodial parent constitutes such a final measure that an order doing so should be based on substantial evidence that the visitation is detrimental to the child’s welfare. (Shipp v Gaglia, 97 AD2d 945 [1983], and cases cited therein.) As there is no appellate authority to the contrary, the general rules regarding visitation will be applied by this court in the context of father’s request for visitation with his son in the prison.
Such general rules provide that: " ' "[visitation is always to be premised upon a consideration of the best interests of the children (Finlay v Finlay, 240 NY 429, 433-434); however, *885 denying visitation to a natural parent is a drastic remedy and should only be done where there are compelling reasons (Herb v Herb, 8 AD2d 419), and there must be substantial evidence that such visitation is detrimental to the children’s welfare (Farhi v Farhi, 64 AD2d 840; Hotze v Hotze, 57 AD2d 85, mot for lv to app den 42 NY2d 805)” (Chirumbolo v Chirumbolo, 75 AD2d 992, 993)’ (Parker v Ford, 89 AD2d 806, 806-807).” (De Pinto v De Pinto, 98 AD2d 985 [1983].)
Hence, the primary issue before this court is whether the welfare of the child will be promoted or disserved by visitation with his father under the present circumstances. This difficult analysis of what in fact serves the child’s best interest must recognize the above-cited policy consideration of maintaining the parental relationship between father and son.
In terms of the child’s best interest viewed in light of the applicable law, the evidence is insufficient to show that very limited, supervised visitation would be detrimental to the child at this time. Mother presented no expert testimony that her son has or is likely to suffer any emotional harm as a result of the visitation in prison. Mother, in her testimony, suggests that the child’s knowledge of his father’s crime will lead to psychological problems in the future. The evidence does not reveal that the child, at the present time, is in emotional danger. As custody and visitation are subject to modification upon changed circumstances, mother has not waived her right upon adequate proof to pursue this argument when and if such potential danger materializes.[2] As previously noted, but for father’s violent criminal conduct resulting in his lengthy incarceration, mother and her son would not be in the process of reconstructing their lives. This court must consider the effect of these visits on the mother’s well-being and emotional stability. Mother is in effect the only parent the child has at this time and the child’s well-being is entirely dependent on his mother’s well-being.
The court acknowledges that mother faces the daily pressure of raising her son as a single parent following the imprisonment of her husband. Under these circumstances, and others as noted hereafter, father’s right to frequent access must yield in the best interests of his son.
*886 Mother exhibited at trial nervous, tense and anxious qualities which are certainly related to the issue of visitation with her son in prison as well as her confusion over the present status of her relationship with her husband. Mother is a devoted, caring and hard-working parent. She is attempting to face each difficulty in a capable and mature fashion. Her life has changed dramatically since the initial arrest of her husband. Her actions are dictated by that which she believes best for her young son.
It is apparent to this court that mother strongly disagrees with any court-ordered imposition of a visitation schedule. Father, to refute this assertion, testified that his family, including his wife, was successful in obtaining his transfer to a closer correctional facility for visitation purposes. Although mother did not deny that she was instrumental in this endeavor, her testimony acknowledges that her resistance to imposed visitation has intensified recently.
Her credible testimony reveals that her current position results from a culmination of unfortunate incidents and contacts with her husband. The parties were married on April 4, 1980.
Their only child was born on February 12, 1985. Ten days after the birth of his son father was arrested and charged with rape and assault. Conviction occurred on July 13, 1985. From this date to March of 1986, father visited with his son three times.
Visitation at the Auburn Correctional Facility which has occurred with more frequency takes place in one of several large visiting rooms. The area designated for such visits is a severe environment under the close scrutiny of guards and within the proximity of other criminal inmates. Mother accurately indicates that such facilities are far from ideal.
Mother testified that her husband has become more obstinate jn his mandates concerning visitation. He has become angry when she has arrived late. Father has made certain unreasonable demands of mother, including, inter alia, his direction that he does not want anyone else to hold his son.
Mother has testified that her husband is not aware of and ignores her son’s daily schedule. After certain visits her son is "fussy” and clings to her. The visitations interrupt the child’s daily routine which she accurately described. As she is presently working on her doctoral candidate degree and works *887 part time, her weekends and the time she has to run errands and attend religious services are precious.
Mother has also had to endure one-hour waiting periods prior to the visitation at the jail. Her financial situation is bleak and as a result of the poor condition of her vehicle it broke down on one of her long trips to the prison.
It is clear to this court that mother must have control over the time and frequency of visitation. Her ability to function effectively as a sole custodial parent is of utmost importance to her son. The court finds that it would not be in the best interests of the child to impose upon mother a recurrent frequent visitation schedule. She already finds the situation she is presented with as stressful and difficult.
Nor is this court convinced that father’s sole desire in exercising visitation is occasioned by his concern for the welfare of his son. On the contrary, father has impressed this court as self-centered and domineering. His demeanor in court and his statements to his wife reveal his character.
Unlike other cases, Mr. J. is not a "doting, dutiful or attentive father” (see, Matter of Denberg, 34 Misc 2d 980 [1962]). As noted by the Law Guardian, "[t]he criminal conduct of petitioner resulting in his extended incarceration was engaged in some ten days after the birth of his biological son.” He only resided with his son for seven days. No strong parent-child relationship has been established between father and son. The child does not understand that petitioner is his father. Mother properly attributes this to the child’s youth and lack of contact with his father. For these reasons the following order is entered:
1. Father will have visitation with his son once every six months for a period of not more than four hours.
2. Mother will be responsible for transporting the child for these visits and will choose the time and date of visitation.
3. The first such visitation pursuant to this order will occur on or before January 1, 1987. The second visitation will occur on or before June 1, 1987.
4. Nothing contained in this order prevents mother from visiting with father at any times in addition to this order.
5. In the event mother is unable to drive the child to the prison for such visitation, she may apply to this court for assistance.

. Petitioner’s reliance upon the case of Matter of G. Children (124 Misc 2d 1024 [1984]) is misplaced. Social Services Law § 384-b (7) requires the Department of Social Services to use diligent efforts to strengthen the parental relationship. Such statute is inapplicable in the instant case.

. At some point in the future, countervailing factors affecting the child’s best interest may indicate that the emotional and psychological burden of maintaining the parental relationship by prison visits will be more damaging to the child. At such time the court will consider the issue of denying visitation to petitioner.