OPINION OF THE COURT
Karen K. Peters, J.
This matter concerns a father’s request for court-ordered visitation with his children. Mr. C. is presently incarcerated in a State prison. The matter before the court took some time to get to trial as venue was changed from Columbia County to Ulster County. The case was tried before the court on April 28, 1992. As counsel were to prepare memoranda of law for *337 the court’s review, it was not deemed fully submitted until the 29th day of May 1992.
This court has received memoranda of law from counsel.
At a fact-finding hearing held on April 28, 1992, Mr. C. testified on his own behalf. He called no additional witnesses in support of his application for court-ordered visitation with his children Kayla, born March 21, 1987, and Scott Randolph, born February 11, 1989. Mr. C. contended that he is presently incarcerated at Woodburne Correctional Facility as a result of his convictions for burglary in the second degree and possession of stolen property. He was sentenced to serve four to eight years in a State prison and has been in custody on these convictions since January 17, 1990. He admitted that when he was at Mid-State Correctional Facility from January through May of 1990, Ms. C. brought the children to visit with him and that after his transfer to Woodburne Correctional Facility, where he is presently incarcerated, the children visited with him on a few occasions. He alleged that at the last visit, he had an argument with Ms. C. and she has refused to bring the children to see him since. He further contends that he has been unable to communicate with the children because she refused to provide him with her present address or phone number. He requests the court to order that the children be brought to prison once per month so that he may visit with them and requests that the court require that a member of his family provide the transportation.
Upon questioning by counsel for the respondent and the Law Guardian, Mr. C. admitted that the visiting room at the State prison in which he is presently incarcerated is not able to accommodate those persons who come for visits. Counsel stipulated that the room is 30 feet by 30 feet. Despite the small size of the room, up to 150 people are accommodated in that room on a visitation day. Mr. C. further admitted that the length of his sentence is directly related to the fact that his conviction was his second felony conviction.
Ms. C., the respondent, testified on her own behalf. She testified that Mr. C. has been incarcerated since January of 1990. She stated that after he was sent to prison, she took the kids to visit with him on at least four to five occasions, borrowing a vehicle in order to do. She testified that the last time she took the children to visit, the visiting room contained approximately 100 people and that she became aware of the fact that sexual contact was taking place between one of the *338 prisoners and a woman in the visiting room. She testified that Mr. C. did not see the sexual contact because his back was to the individuals who were engaged in this behavior but that her children could clearly see what was going on. She was concerned about the affects of this type of behavior upon her children. In addition, she testified that often in a visiting room, touching of "private areas” takes place.
Ms. C. testified about certain incidents by and between herself and Mr. C. and concerns that she has regarding the children and their father. She has no desire to bring the children to the prison to visit with their father but had no objection to visitation upon his release. Upon questioning by the court, Ms. C. advised that she was quite willing to allow the children to visit at their aunt’s home so they could receive phone calls from their father at that location. While she refused to provide her telephone number to Mr. C. fearing that he might call collect, she was quite willing to have the children visit with the paternal aunt on a regular basis for the aforementioned purpose. In addition, she was amenable to an order allowing Mr. C. to communicate with the children in writing at the paternal aunt’s address and that the paternal aunt would be permitted to provide the children with the letters, cards, or other materials she received from their father.
Counsel for petitioner contends that the fact that the State does not provide a better setting for visitation cannot, in and of itself, be grounds for the court to refuse to require that the children be produced at the prison in order to visit with their father. Counsel argues "it would be ironic if the court determined that the State itself was thereby abrogating its more important responsibility to preserve the parental bond.” He contends that the State’s interest in preserving the relationship between Mr. C. and his children far outweighs the mere possibility that the children might see something inappropriate during a visit at the prison.
The Law Guardian is of the opinion that in-prison visitation between Mr. C. and his children would be detrimental to the children’s welfare. The Law Guardian suggests that the court deny Mr. C.’s request for an order requiring that the children be produced at the prison but suggests that the denial be without prejudice to Mr. C.’s right to reapply for visitation if he is released on parole or on a work release program.
Parental visitation is ordinarily considered to be in the best *339 interests of the child. (See, Matter of Wise v Toro, 122 AD2d 714.) This reflects the understanding that a child’s welfare is best served by his being nurtured and guided by both natural parents. (Twersky v Twersky, 103 AD2d 775.) The Court of Appeals has written that “[h]ow valuable the mature guiding hand and love of a second parent may be to a child is taught by life itself’ (Weiss v Weiss, 52 NY2d 170, 175), and the Family Court has noted that denying visitation can have “unforeseeable consequences for the child’s future.” (Matter of Doe v Doe, 86 Misc 2d 194, 204.)
Several courts have noted that this right is not forfeited by virtue of a parent’s incarceration. (See, Matter of R. J. v D. J., 133 Misc 2d 883; Hampsey v Hampsey, 149 Misc 2d 606.) In Matter of Wise v Toro (122 AD2d 714, supra), the Appellate Division has held that ”[i]t cannot be said that the fact of a parent’s incarceration, standing alone, makes visitation of that parent’s child inappropriate.” (Supra, at 714-715.) The court in Wise took note of the fact that “visitation by children to incarcerated parents is frequent in this State and that the Department of Correctional Services makes provision for such visitation.” (Supra, at 714.)
The right of visitation, however, is not absolute. (Hampsey v Hampsey, 149 Misc 2d 606, 607, supra; Matter of R. J. v D. J., 133 Misc 2d 883, 884, supra.) It is qualified by the courts’ overriding concern for the welfare of the child. (Weiss v Weiss, 52 NY2d 170, 174-175, supra; Finlay v Finlay, 240 NY 429, 433-434; Hotze v Hotze, 57 AD2d 85, 87; Herb v Herb, 8 AD2d 419, 420-421; Hampsey v Hampsey, 149 Misc 2d 606, 607; Matter of R. J. v D. J., 133 Misc 2d 883, 884.) As stated by Justice Cardozo in Finlay v Finlay (240 NY 429), the Court must assume the role of parens patriae and focus its determination on the best interests of the child. (Supra, at 433.) Justice Cardozo thus guided that the court must put itself in “the position of a 'wise, affectionate and careful parent’,” placing the welfare of the child above the rights of the parents. (Supra; see also, People ex rel. Meredith v Meredith, 272 App Div 79, 82.)
The testimony of Ms. C. concerning the conditions at the Woodburne facility causes this court great concern for the children’s well-being. Ms. C.’s uncontradicted testimony concerning the fondling and sexual contact between inmates and visitors, coupled with the room’s small size and large number of visitors, certainly forces the conclusion that such conduct could hardly escape the notice of small children. Given that *340 the Department of Correctional Services has made no special provisions for child visitation at the Woodburne facility and Mr. C.’s admission that the facility’s visiting room is inadequate to accommodate children, this court finds that it would be inappropriate for the children to visit with Mr. C. at the Woodburne facility.
Yet, this court finds that Mr. C. should not be denied all contact with his children during his period of incarceration due to the failure of the Department of Correctional Services to adequately provide an appropriate area for such visitation. In light of the above, this court will allow Mr. C. to communicate with his children by letter and by telephone on the following basis: (1) the parties shall arrange for the children to be present at a specific day and time before 8:00 p.m. at the home of their paternal aunt so that Mr. C. can place a telephone call to them on a weekly basis; (2) Mr. C. shall be permitted to send letters and other appropriate materials to the children at the address of the paternal aunt and such aunt is hereby directed to provide these materials to the children; and (3) the children shall spend at least one hour with the paternal aunt on those days that Mr. C. is scheduled to telephone the children for the purpose of having such aunt assist the children in writing to their father or drawing pictures which shall be forwarded by such aunt to Mr. C.
This denial of in-prison visitation shall be without prejudice. Mr. C. may petition this court for visitation once he is released on parole or on a work release program.