■ In the Matter of DAVID H. ROSE, Appellant, v HELEN P. EVELAND, Respondent. [659 NYS2d 576] —Mikoll, J. P. Appeal from an order of the Family Court of Broome County (Hester, Jr., J.), entered August 13, 1996, which partially granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for visitation with the parties' child.

Petitioner and respondent are the father and mother, respectively, of a son, Joshua, born in 1991. In August 1992 re-

spondent was adjudicated to have neglected the child and the child was placed in the custody of his paternal grandmother. The child was in the grandmother's custody for over two years. During this time petitioner lived in a small house within 50 feet of his parent's house on his parent's property and visited with the child frequently. Petitioner and respondent were subsequently granted joint custody of the child with his primary residence with respondent and petitioner being granted visitation.

In June 1995 petitioner was arrested for felony drug possession. The child was with petitioner at the time of the arrest. Respondent was granted sole custody on a stipulation that petitioner could reapply for joint custody upon completion of a drug rehabilitation program and parenting classes. Petitioner was permitted supervised visitation with the child at the Family and Children's Society for up to three hours, once each week. In December 1995 petitioner was again arrested on a possession of cocaine charge while on bail. Petitioner was then held in the Broome County jail and in February 1996 filed the instant petition seeking visitation with the child at the jail. Petitioner claimed that he had not seen the child since December 1995.

Following a hearing at which petitioner, respondent, two parent aides who supervised petitioner's visits with the child at the Family and Children's Society and the grandmother testified. Family Court also questioned petitioner concerning his prior arrest record back to 1994 based on a probation report. Respondent also participated *pro se* and the child was interviewed in camera by the Law Guardian and the court. By order entered August 13, 1996 Family Court found that "while there was no evidence that visitation will harm Joshua, it doesn't appear necessary for Joshua's well-being to have frequent contact with his father". The court ordered one visit between the child and petitioner to take place before September 15, 1996, and noted that respondent will then be able to assess her son's reaction to seeing petitioner after a long lapse and under circumstances of confinement. The court further ordered that "petitioner may seek additional relief from the court when his criminal case is resolved and the nature and extent of future incarceration is known to him". This appeal ensued.

Petitioner's contention that Family Court erred in applying the law to facts in denying his request for regular visitation is meritorious. The order of Family Court should be modified by reversing so much thereof as failed to grant petitioner regular visitation, and the matter should be remitted to arrange a reasonable visitation schedule.

This Court stated in *Matter of Davis v Davis* (232 AD2d 773) that "[i]t is generally presumed to be in a child's best interest to have visitation with his or her noncustodial parent and the fact that a parent is incarcerated will not, by itself, render visitation inappropriate". The denial of visitation to a natural parent has been held to be a drastic remedy which should only be invoked where there is substantial evidence that such visitation would be harmful to the child (*see, id.*, at 773; *see also, Paul G. v Donna G.*, 175 AD2d 236, 237).

Here, Family Court found that there was no evidence that visitation will harm the child, yet declined to rule on whether visitation could take place or to provide for a further ruling after the one ordered visit took place. The testimony revealed that the child loved petitioner and enjoyed his visits with him, and that petitioner loved the child and wanted to visit with him regularly. Although the suitability of the old jail for visitation was questioned, the brief submitted by the Law Guardian notes that the new jail facility was up and running fully by June 1996, answering concerns that the old facility was inadequate for the child to visit.

We further note that there were discrepancies in what Family Court found to be factual and the record relating to the effort of petitioner to visit with his child, which was daily while the child was living with his paternal grandmother. Respondent testified that between December 1995 and February 1996, petitioner sent three or four letters to his son requesting visitation and containing messages for him. She also said that petitioner sent him an Easter card which he had drawn. Respondent also testified that she had no objection to the child going to the new jail facility for visitation. She also stated that petitioner had been physically violent toward her when they had a fight in the past. Respondent stated that petitioner had not called from the jail to speak with the child but later admitted that she had a block on her phone which prevented receipt of collect calls. The record also indicates that respondent refused to speak with or communicate with petitioner but that the paternal grandmother is available to relay messages and to facilitate visitation, if required. We further note that the Law Guardian in his brief on appeal concludes that Family Court failed to adequately marshal the evidence and requests that the order of the court be reversed.

Crew III, White, Yesawich Jr. and Peters, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as failed to grant petitioner reasonable visitation on a regular basis; matter remitted to the

Family Court of Broome County to arrange a visitation schedule; and, as so modified, affirmed.