OPINION OF THE COURT
Ruth C. Balkin, J.
Background
Petitioner father, an inmate at Greene Correctional Facility, Coxsackie, New York, filed a petition on October 12, 2000, seeking jail visitation with his 22-month-old child, Samantha *922 P. (date of birth Apr. 21, 1999). Petitioner father (age 21) and respondent mother (age 20) are not married and are the parents of Samantha P. Petitioner father executed an acknowledgment of paternity shortly after Samantha was born. Respondent mother was granted custody of Samantha on March 20, 2001.
Respondent mother is opposed to petitioner father having jail visitation with their daughter, despite the fact that for the first six months of the infant’s life, the child participated in frequent jail visitation with her father at various correctional facilities in New York State. Respondent mother and Samantha reside in the home of the maternal grandparents in West Hempstead. Respondent currently works and attends Nassau Community College. Petitioner remains incarcerated and has a conditional release date of June 20, 2002 and a maximum release date of June 18, 2003.
A Law Guardian, Roberta Kaufman, Esq., was appointed to represent the interests of the child. Petitioner father was produced in Nassau County Family Court from the Greene Correctional Facility for purposes of a hearing limited to the issue of jail visitation with Samantha. Both petitioner and respondent were represented by counsel at the hearing.
A probation investigation and report was ordered by the Court in aid of these proceedings (respondent’s exhibit A).
Findings of Fact
Petitioner father and respondent mother met in July of 1998. In September or October of 1998, petitioner father found out that respondent mother was pregnant. On January 20, 1999, petitioner father was arrested for attempted robbery and sentenced on July 13, 1999 to a four-year concurrent term as a result of a plea to two counts of attempted robbery in the first degree and one count of attempted robbery in the second degree. From the time petitioner father entered the correctional system in January 1999 until September 1999, respondent mother and the paternal grandmother (Grace C.) traveled together, along with the infant child Samantha, to visit petitioner in various jails throughout New York State.
Petitioner father and respondent mother both testified to a volatile relationship prior to petitioner’s incarceration. In addition to the conviction for attempted robbery, petitioner admitted to prior use of cocaine and one occasion of domestic violence wherein (he slapped and shook the respondent mother. Respondent testified to more frequent instances of physical abuse by petitioner, and his ability to control and dominate both her *923 mind and her possessions. The parties had several breakups and reconciliations in their relationship.
Both parties exchanged detailed passionate love letters while petitioner was incarcerated, respondent often referring to herself as petitioner’s “wife,” and referring to petitioner as her “husband.” Some letters sent by respondent mother to petitioner father included photos and updates regarding Samantha, and other letters urged petitioner father to call respondent and write to her. There were numerous collect calls that petitioner made to respondent’s residence, and respondent’s mother (Cathy S.) reported phone bills of several hundred dollars in collect calls from petitioner. Up until October 1999, petitioner and respondent continued their relationship through the phone, letters and frequent jail visits with Samantha.
Respondent, who was pregnant when petitioner was incarcerated, facilitated the first jail visit between petitioner and Samantha in May 1999 at Rikers Island when the child was approximately one month old. During the following two months, there were approximately 10 jail visits between petitioner and respondent at Rikers Island, with Samantha present for all visitations and the paternal grandmother often accompanying Samantha and respondent mother. Respondent arranged a lawyer for petitioner and attended all his court appearances.
Upon petitioner’s transfer to the upstate facility of Ulster County Correctional Center, respondent drove the paternal grandmother and Samantha in her vehicle, for the 1-hour, 45-minute ride to the facility. Two visits occurred during a weekend in late June or early July 1999. The visits lasted from 9:00 a.m. to 3:00 p.m. and petitioner held the baby and fed her.
As a result of petitionér’s transfer to the Watertown Correctional Facility, respondent, Samantha and the paternal grandmother drove eight hours (each way) in respondent’s car for a jail visit to Watertown. Respondent, Samantha and the paternal grandmother stayed overnight at a hotel and had two visits with petitioner during their weekend. Each visit occurred between 9:00 a.m. and 3:00 p.m. and Samantha was present for the entire visit.
Respondent was incarcerated at Watertown for approximately IV2 months, and was transferred to Greene Correctional Facility in September 1999. Respondent and Samantha traveled approximately 2V2 hours (each way) to the Greene Correctional Facility, and attended one visit with petitioner. A second visit occurred with respondent, Samantha and the paternal grandmother lasting from 9:00 a.m. to 3:00 p.m. The *924 paternal grandmother and petitioner described the facility as being child friendly, with space for children to play, and supervision by prison personnel. The grandmother testified that there were never any problems between her son, Samantha and respondent during the visits.
A third visit to the Greene Facility scheduled in mid-October 1999 was cancelled by respondent mother. In fact, shortly before petitioner’s birthday on October 15, 1999, respondent mother informed petitioner father in a telephone conversation that she no longer wished to visit him as a result of petitioner’s accusations that she was sleeping with someone else and petitioner’s statement that he was not Samantha’s father. Petitioner testified that he made the statements out of anger, because he suspected respondent had a boyfriend. Samantha was six months old at the time of the last visit to the Greene Correctional Facility.
After this last argument, respondent had a block placed on her phone to prevent petitioner from calling her collect at her residence. When petitioner attempted to call respondent via a “three way telephone call,” respondent complained to the jail and petitioner was placed in solitary confinement. Petitioner wrote one letter to the respondent thereafter, and initiated no further contact with respondent. As a result of court intervention resulting from the filing of this petition, respondent mother sent pictures of Samantha to petitioner. Respondent testified that she would be more than happy to continue sending petitioner pictures of Samantha and showing Samantha pictures of her father, but she would prefer not to bring Samantha for a jail visit.
Although the paternal grandmother had a good relationship with respondent mother and Samantha, she has not seen Samantha since September or October of 1999, the last jail visit that took place with Samantha. The paternal grandmother testified that she ceased contact with respondent and Samantha, after her son was disciplined in jail as a result of telephoning respondent. The paternal grandmother acknowledged that the maternal grandmother extended an invitation for her to see Samantha; however, she did not want to jeopardize her son, and thought it best to avoid contact with respondent and Samantha.
The paternal grandmother conceded that Samantha, who was six months old when she last saw her, and is now 22 months old, would not recognize her. The paternal grandmother testified that she would be willing to transport Samantha to *925 visit with petitioner, and, as a precondition, would be willing to visit with Samantha and spend time reacquainting herself with her granddaughter prior to a jail visit. The paternal grandmother would be willing to have petitioner’s friend, 21-year-old Nicole M. (who testified in court), drive her and Samantha to the Greene Facility, or alternatively, the paternal grandmother would assume the financial responsibility for tolls, transportation and gas, for respondent or other facilitators to bring Samantha.
The maternal grandmother, while opposing jail visitation between her granddaughter and petitioner, testified that if jail visits were ordered by the Court, she would facilitate the transportation and supervision of the jail visit.
Petitioner father testified that it is important that he establish a relationship with his only child and he does not want to defer his relationship with Samantha until after his release from jail. Petitioner testified that he is enrolled in a drug program in jail, as well as two programs for aggression replacement training and a program for his GED. At a bare minimum, he requests visits with Samantha around his birthday and the child’s birthday. Petitioner testified he was seeking jail visitation with Samantha regardless of whether his relationship with respondent had ended.
Respondent mother testified that she is opposed to jail visitation between petitioner and Samantha because at 22 months of age the child is walking, cannot be confined to a five-hour car trip (2V2 hours each way), cannot take a car trip with strangers (including the paternal grandmother) and cannot be confined for long periods of time to a constricted visiting area within the jail. Additionally, the jail setting may pose a health risk due to germs and uncleanliness and the possibility that the child may touch something or place something in her mouth. Additionally, the respondent mother does not want to see the petitioner, who she believes is using this proceeding as a means to maintaining their relationship.
Christine Cole, a probation officer employed by the Nassau County Department of Probation, was assigned to provide an investigation and report to the Court concerning petitioner’s application for jail visitation. She recommended that there be no prison visitation between petitioner and Samantha after reviewing petitioner’s probation report, conducting in person interviews with respondent and Samantha and a telephone interview with petitioner at the jail. Additionally, she reviewed the criminal background of petitioner as well as correspondence that petitioner wrote respondent.
*926 Ms. Cole based her recommendation on the fact that jail visitation would involve a six- or seven-hour round trip and the child, who was an active toddler, might be exposed to germs in the prison environment. Additionally, the probation officer had concerns about requiring respondent to visit petitioner in light of their past abusive relationship.
Ms. Cole was not aware in making her recommendation that respondent wrote letters to the petitioner or. that the trip to the Greene Correctional Facility was a five-hour round trip. The probation officer did not contact Greene Correctional Facility to ascertain information regarding the visitation facilities for children, because she relied on what respondent told her. According to Ms. Cole, as the “custodial parent she [respondent] has the final vote.”
Ms. Cole did not inquire as to whether petitioner was in any rehabilitation programs in jail, stating that would not have made a difference in her recommendation. Additionally, Ms. Cole in making her recommendation was not aware of the frequency of the jail visits or the distance that respondent and Samantha had traveled to visit petitioner in jail facilities, concluding it would not have changed her recommendation. In fact, Ms. Cole was not aware that respondent had previously visited petitioner at the Greene Facility with Samantha.
The Law Guardian opposed any jail visitation between Samantha and petitioner father, citing her concerns for the child, the inappropriateness of the jail environment for visitation, the travel distance, the paternal grandmother’s inability to be a facilitator in light of the gap in visitation with Samantha, the criminal background of petitioner and the abusive relationship fostered by petitioner.
Conclusions of Law
It is generally presumed to be in a child’s best interest to have visitation with his or her noncustodial parent and “the fact that a parent is incarcerated will not, by itself, render visitation inappropriate” (Matter of Davis v Davis, 232 AD2d 773; see also Matter of Selca v Selca, 267 AD2d 314; McCrone v Parker, 265 AD2d 757; Matter of Ellett v Ellett, 265 AD2d 747; Matter of Wise v Del Toro, 122 AD2d 714; Matter of Vann v Vann, 187 AD2d 821). While an award of visitation is always conditioned upon a consideration of the best interests of the children, “denying visitation to a [biological] parent is a drastic remedy and should only be done where there are compelling reasons * * * and there must be substantial evidence that such visitation is detrimental to the child’s welfare” (Matter of *927 Rhynes v Rhynes, 242 AD2d 943; Matter of R. J. v D. J., 133 Misc 2d 883) and not in the child’s best interest (Matter of Rogowski v Rogowski, 251 AD2d 827).
Although petitioner has been less than a model citizen and is incarcerated as a result of his own actions, there was no substantial evidence presented at this hearing that limited, supervised visitation in jail would be detrimental to Samantha (Matter of Rose v Eveland, 241 AD2d 638). It is uncontroverted that Samantha, since birth, has been a participant in jail visitation with her father, and has traveled great distances at the initiative of her mother to visit with her father. There is no testimony that petitioner was inappropriate with Samantha, or failed to interact with her or bond during the jail visits. On the contrary, the testimony reveals that petitioner fed Samantha, took pictures with her, and held her throughout their visits.
Although the suitability of a jail for visitation by a toddler was questioned by respondent, the probation officer and the Law Guardian, respondent’s own activity in subjecting her infant to the various jail environments without any negative impact belies these very concerns. The maternal grandmother with whom Samantha resides never observed any detrimental changes as a result of the jail visitation, nor was there evidence of any germs, allergies or other illness contracted by the child. The evidence does not reveal that the child, at the present time, is in emotional danger as a result of contact with her father, or that the father would be inappropriate during visitation with the child.
While the views of independent experts are ordinarily entitled to some weight, the Court rejects the recommendation of the probation officer, given the fact that she failed to consider many of the factors pertinent to petitioner’s application, and gave respondent the “final vote” on the issue of jail visitation without even making inquiry as to the logistics for a child’s visit at the Greene Facility (Forzano v Scuderi, 224 AD2d 385, 386, citing Alanna M. v Duncan M., 204 AD2d 409; Young v Young, 212 AD2d 114, 118).
The paternal grandmother and petitioner father testified to the adequacy of the jail visitation facilities for the child, including total supervision and space for the toddler to play. Respondent mother, who brought Samantha to the Greene Facility, never objected to the visitation area at the time of the visit. To deny petitioner visitation with Samantha based on the opposition of the respondent and the cost and inconvenience to her would be an abuse of discretion (Matter of Rhynes v Rhynes, *928 supra). However, petitioner must also recognize that as a result of his poor judgment and prior abusive relationship with respondent, this Court will not consider respondent as a “transportation resource” for Samantha and thus the available facilitators are limited.
Accordingly, this Court, taking into consideration the age of the child, the distance the child will travel, the availability of transportation, the available facilitators to transport the child, the sentence of petitioner, the Law Guardian recommendation and the “best interest of the child” has concluded that the following visitation schedule shall be ordered:
(1) There shall be a minimum of two visits a year to be facilitated by the maternal or paternal grandmother (or both) at respondent’s option.
This limited schedule is being implemented with due regard by this Court that respondent should not be required to personally attend the jail visitation and will be relying on family facilitators to transport the child. This schedule, nonetheless, recognizes that petitioner, who is attempting to rehabilitate himself in jail and has demonstrated appropriate interaction with his daughter, should not be deprived of establishing a relationship with his only child. Nothing contained in this order prevents the respondent from setting up any additional visitation with petitioner through facilitators at any times in addition to this order.
(2) The Court would request the “cooperation” of the facilitators to implement the two visits at times proximate to petitioner’s birthday (October) and Samantha’s birthday (April). The visits shall not exceed three hours, unless consented to by the facilitator.
(3) The paternal grandmother, per her representation in Court, shall contribute to the cost of travel expenses for the jail visit, if requested by the respondent.
(4) This order is contingent upon petitioner’s jail designation being within 2V2 hours (each way) of respondent’s residence. Should petitioner be transferred to a facility of a greater distance upstate, such transfer will constitute a change in circumstances sufficient for this Court to review its order.
(5) In addition to jail visitation, respondent mother shall send pictures of Samantha to petitioner and petitioner shall be permitted to send birthday and holiday cards to Samantha.